## JOHNSON ET AL. *v.* FANKELL

No. 96–292.   Argued February 26, 1997—Decided June 9, 1997

*Michael S. Gilmore*, Deputy Attorney General of Idaho, argued the cause for petitioners. With him on the briefs were *Alan G. Lance*, Attorney General, *David G. High*, Chief Deputy Attorney General, and *Margaret R. Hughes*, Deputy Attorney General.

*W. B. Latta, Jr.*, argued the cause for respondent. With him on the brief was *Eric Schnapper*.*

---

*A brief of *amici curiae* was filed for the Commonwealth of Kentucky et al. by *A. B. Chandler III*, Attorney General of Kentucky, *Bill Pettus*, Assistant Attorney General, *Scott White*, Assistant Deputy Attorney General, and *Brent Irvin*, Assistant Attorney General, and by the Attorneys

JUSTICE STEVENS delivered the opinion of the Court.

The question presented is whether defendants in an action brought under Rev. Stat. § 1979, 42 U. S. C. § 1983, in state court have a federal right to an interlocutory appeal from a denial of qualified immunity. We hold that they do not.

## I

Petitioners are officials of the Idaho Liquor Dispensary. Respondent, a former liquor store clerk, brought this action for damages under § 1983 in the District Court for the County of Bonner, Idaho. She alleged that petitioners deprived her of property without due process of law in violation of the Fourteenth Amendment to the Federal Constitution when they terminated her employment. Petitioners moved to dismiss the complaint on the ground that they were entitled to qualified immunity. They contended that, at the time of respondent's dismissal, they reasonably believed that she was a probationary employee who had no property interest in her job. Accordingly, petitioners argued, her termination did not violate clearly established law. The trial court

General for their respective jurisdictions as follows: *Bruce M. Botelho* of Alaska, *Grant Woods* of Arizona, *Winston Bryant* of Arkansas, *Daniel E. Lungren* of California, *Gale A. Norton* of Colorado, *Robert A. Butterworth* of Florida, *Michael J. Bowers* of Georgia, *Margery S. Bronster* of Hawaii, *James E. Ryan* of Illinois, *Tom Miller* of Iowa, *Carla J. Stovall* of Kansas, *Richard P. Ieyoub* of Louisiana, *J. Joseph Curran, Jr.,* of Maryland, *Frank J. Kelley* of Michigan, *Hubert H. Humphrey III* of Minnesota, *Mike Moore* of Mississippi, *Jeremiah W. (Jay) Nixon* of Missouri, *Joseph P. Mazurek* of Montana, *Don Stenberg* of Nebraska, *Frankie Sue Del Papa* of Nevada, *Jeffrey R. Howard* of New Hampshire, *Dennis C. Vacco* of New York, *Michael F. Easley* of North Carolina, *Heidi Heitkamp* of North Dakota, *Betty D. Montgomery* of Ohio, *Drew Edmondson* of Oklahoma, *Thomas W. Corbett, Jr.,* of Pennsylvania, *Jeffrey B. Pine* of Rhode Island, *Mark Barnett* of South Dakota, *Dan Morales* of Texas, *Jeffrey L. Amestoy* of Vermont, *Julio A. Brady* of the Virgin Islands, *Christine O. Gregoire* of Washington, *Darrell V. McGraw, Jr.,* of West Virginia, and *James E. Doyle* of Wisconsin.

denied the motion,[1] and petitioners filed a timely notice of appeal to the Supreme Court of the State of Idaho.

The State Supreme Court entered an order dismissing the appeal. The court explained that an order denying a motion for summary judgment is not appealable under Idaho Appellate Rule 11(a)(1) "for the reason it is not from a final order or Judgment." App. 67. It also rejected petitioners' arguments that the order was appealable under 42 U. S. C. § 1983 and *Behrens* v. *Pelletier*, 516 U. S. 299 (1996). Petitioners sought rehearing, again arguing that the order was final within the meaning of the Idaho Appellate Rule, and, in the alternative, that they had a right to appeal as a matter of federal law. The court denied rehearing and dismissed the appeal.

Petitioners then filed a petition in this Court seeking either a writ of certiorari or a writ of mandamus. They pointed out that some state courts, unlike the Idaho Supreme Court, allow interlocutory appeals of orders denying qualified immunity on the theory that such review is necessary to protect a substantial federal right, see *McLin* v. *Trimble*, 795 P. 2d 1035, 1037–1038 (Okla. 1990); *Lakewood* v. *Brace*, 919 P. 2d 231, 238–240 (Colo. 1996). We granted certiorari to resolve the conflict, 519 U. S. 947 (1996), and now affirm.

II

We have recognized a qualified immunity defense for both federal officials sued under the implied cause of action asserted in *Bivens* v. *Six Unknown Fed. Narcotics Agents*, 403 U. S. 388 (1971), and state officials sued under 42 U. S. C. § 1983. In both situations, "officials performing discretionary function[s] generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a rea-

---

[1] Because affidavits had been filed in support of the motion, the court treated it as a motion for summary judgment.

sonable person would have known." *Harlow* v. *Fitzgerald*, 457 U. S. 800, 818 (1982).

This "qualified immunity" defense is valuable to officials asserting it for two reasons. First, if it is found applicable at any stage of the proceedings, it determines the outcome of the litigation by shielding the official from damages liability. Second, when the complaint fails to allege a violation of clearly established law or when discovery fails to uncover evidence sufficient to create a genuine issue whether the defendant committed such a violation, it provides the defendant with an immunity from the burdens of trial as well as a defense to liability.[2] Indeed, one reason for adopting the objective test announced in *Harlow* was to "permit the resolution of many insubstantial claims on summary judgment." *Ibid.*

Consistent with that purpose, we held in *Mitchell* v. *Forsyth*, 472 U. S. 511, 524–530 (1985), that a Federal District Court order rejecting a qualified immunity defense on the ground that the defendant's actions—if proved—would have violated clearly established law may be appealed immediately as a "final decision" within the meaning of the general federal appellate jurisdiction statute, 28 U. S. C. § 1291.[3] If this action had been brought in a federal court, therefore, petitioners would have had a right to take an appeal from the trial court's order denying their motion for summary judgment.

Relying on the facts (a) that respondent has asserted a federal claim under a federal statute, and (b) that they are

---

[2] Of course, when a case can be dismissed on the pleadings or in an early pretrial stage, qualified immunity also provides officials with the valuable protection from "the burdens of broad-reaching discovery," *Harlow* v. *Fitzgerald*, 457 U. S. 800, 818 (1982).

[3] While *Mitchell* v. *Forsyth*, 472 U. S. 511 (1985), involved a *Bivens* v. *Six Unknown Fed. Narcotics Agents*, 403 U. S. 388 (1971), action against a federal official, we have also construed § 1291 to authorize similar appeals in actions brought against state officials under § 1983. See, *e. g.*, *Johnson* v. *Jones*, 515 U. S. 304 (1995).

asserting a defense provided by federal law, petitioners submit that the Idaho courts must protect their right to avoid the burdens of trial by allowing the same interlocutory appeal that would be available in a federal court. They support this submission with two different arguments: First, that when the Idaho courts construe their own rules allowing appeals from final judgments, they must accept the federal definition of finality in cases brought under § 1983; and second, that if those rules do not authorize the appeal, they are pre-empted by federal law. We find neither argument persuasive.

### III

We can easily dispense with petitioners' first contention that Idaho must follow the federal construction of a "final decision." Even if the Idaho and federal statutes contained identical language—and they do not[4]—the interpretation of the Idaho statute by the Idaho Supreme Court would be binding on federal courts. Neither this Court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State. See, *e. g.*, *New York* v. *Ferber*, 458 U. S. 747, 767 (1982); *Exxon Corp.* v. *Department of Revenue of Wis.*, 447 U. S. 207, 226, n. 9 (1980); *Commissioner* v. *Estate of Bosch*, 387 U. S. 456, 465 (1967). This proposition, fundamental to our system of federalism, is applicable to procedural as well as substantive rules. See *Wardius* v. *Oregon*, 412 U. S. 470, 477 (1973).

The definition of the term "final decision" that we adopted in *Mitchell* was an application of the "collateral order" doctrine first recognized in *Cohen* v. *Beneficial Industrial Loan*

---

[4] "Final decision" is the operative term of § 1291, whereas "[j]udgments, orders and decrees which are final" is the language of Idaho Appellate Rule 11(a)(1).

*Corp.*, 337 U. S. 541 (1949). In that case, as in all of our cases following it, we were construing the federal statutory language of 28 U. S. C. § 1291.[5] While some States have adopted a similar "collateral order" exception when construing their jurisdictional statutes,[6] we have never suggested that federal law compelled them to do so. Indeed, a number of States employ collateral order doctrines that reject the limitations this Court has placed on § 1291.[7] Idaho could, of

---

[5] Thus, in *Mitchell* we explained: "In holding these and similar issues of absolute immunity to be appealable under the collateral order doctrine, see *Abney* v. *United States*, [431 U. S. 651 (1977)]; *Helstoski* v. *Meanor*, 442 U. S. 500 (1979); *Nixon* v. *Fitzgerald*, 457 U. S. 731 (1982), the Court has recognized that a question of immunity is separate from the merits of the underlying action for purposes of the *Cohen* test even though a reviewing court must consider the plaintiff's factual allegations in resolving the immunity issue. Accordingly, we hold that a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U. S. C. § 1291 notwithstanding the absence of a final judgment." 472 U. S., at 528–530 (footnote omitted).

[6] See, *e. g., Richardson* v. *Chevrefils*, 131 N. H. 227, 231, 552 A. 2d 89, 92 (1988) ("Although all of the court's rulings . . . would normally be treated as interlocutory, . . . [w]e have followed *Mitchell* in accepting the State defendants' appeal from the order denying their motion for summary judgment"); *Murray* v. *White*, 155 Vt. 621, 626, 587 A. 2d 975, 977–978 (1991) ("In *[Mitchell]*, the Supreme Court held that a trial court's denial of a claim of qualified immunity met these [collateral order] requirements, and we agree with this determination"); *Park County* v. *Cooney*, 845 P. 2d 346, 349 (Wyo. 1992) ("We believe the state decisions which allow appeal, for the reasons detailed in *Mitchell* . . . , are better reasoned; and we therefore hold that an order denying dismissal of a claim based on qualified immunity is an order appealable to this court").

[7] See, *e. g., Goldston* v. *American Motors Corp.*, 326 N. C. 723, 727, 392 S. E. 2d 735, 737 (1990) (disqualification of counsel is appealable under state collateral order doctrine notwithstanding *Richardson-Merrell Inc.* v. *Koller*, 472 U. S. 424 (1985)); *Hanson* v. *Federal Signal Corp.*, 451 Pa. Super. 260, 264–265, 679 A. 2d 785, 787–788 (1996) (same for class certification denial notwithstanding *Coopers & Lybrand* v. *Livesay*, 437 U. S. 463 (1978)).

course, place the same construction on its Appellate Rule 11(a)(1) as we have placed on § 1291. But that is clearly a choice for that court to make, not one that we have any authority to command.

## IV

Petitioners also contend that, to the extent that Idaho Appellate Rule 11(a)(1) does not allow an interlocutory appeal, it is pre-empted by § 1983. Relying heavily on *Felder* v. *Casey*, 487 U. S. 131 (1988), petitioners first assert that pre-emption is necessary to avoid "different outcomes in § 1983 litigation based solely on whether the claim is asserted in state or federal court," *id.*, at 138. Second, they argue that the state procedure "impermissibly burden[s]" the federal immunity from suit because it does not adequately protect their right to prevail on the immunity question in advance of trial.[8]

For two reasons, petitioners have a heavy burden of persuasion in making this argument. First, our normal presumption against pre-emption is buttressed by the fact that the Idaho Supreme Court's dismissal of the appeal rested squarely on a neutral state Rule regarding the administration of the state courts.[9] As we explained in *Howlett* v. *Rose*, 496 U. S. 356, 372 (1990):

---

[8] See Brief for Petitioners 22.

[9] Unlike the notice-of-claim rule at issue in *Felder* v. *Casey*, 487 U. S., at 140–145, Idaho Appellate Rule 11(a)(1) does not target civil rights claims against the State. See also *Howlett* v. *Rose*, 496 U. S. 356, 380–381 (1990). Instead, it generally permits appeals only of "[j]udgments, orders and decrees which are final," without regard to the identity of the party seeking the appeal or the subject matter of the suit. Petitioners claim that the rule is not neutral because it permits interlocutory appeals in certain limited circumstances but denies an appeal here. But we have never held that a rule must be monolithic to be neutral. Absent evidence that Appellate Rule 11(a)(1) discriminates against interlocutory appeals of § 1983 qualified immunity determinations by defendants—as compared with other types of appeals—we must deem the state procedure neutral.

"When a state court refuses jurisdiction because of a neutral state rule regarding the administration of the courts, we must act with utmost caution before deciding that it is obligated to entertain the claim. See *Missouri ex rel. Southern R. Co.* v. *Mayfield,* 340 U. S. 1 (1950); *Georgia Rail Road & Banking Co.* v. *Musgrove,* 335 U. S. 900 (1949) *(per curiam); Herb* v. *Pitcairn,* 324 U. S. 117 (1945); *Douglas* v. *New York, N. H. & H. R. Co.,* 279 U. S. 377 (1929). The requirement that a state court of competent jurisdiction treat federal law as the law of the land does not necessarily include within it a requirement that the State create a court competent to hear the case in which the federal claim is presented. The general rule, 'bottomed deeply in belief in the importance of state control of state judicial procedure, is that federal law takes the state courts as it finds them.' Hart, [The Relations Between State and Federal Law], 54 Colum. L. Rev. [489, 508 (1954)]; see also *Southland Corp.* v. *Keating,* 465 U. S. 1, 33 (1984) (O'CONNOR, J., dissenting); *FERC* v. *Mississippi,* 456 U. S. [742, 774 (1982)] (opinion of Powell, J.). The States thus have great latitude to establish the structure and jurisdiction of their own courts."

A second barrier to petitioners' argument arises from the nature of the interest protected by the defense of qualified immunity. Petitioners' argument for pre-emption is bottomed on their claims that the Idaho rules are interfering with their federal rights. While it is true that the defense has its source in a federal statute (§ 1983), the ultimate purpose of qualified immunity is to protect the State and its officials from overenforcement of federal rights. The Idaho Supreme Court's application of the State's procedural rules in this context is thus less an interference with *federal* interests than a judgment about how best to balance the competing *state* interests of limiting interlocutory appeals and pro-

viding state officials with immediate review of the merits of their defense.[10]

Petitioners' arguments for pre-emption are not strong enough to overcome these considerable hurdles. Contrary to petitioners' assertions, Idaho's decision not to provide appellate review for the vast majority of interlocutory orders—including denials of qualified immunity in § 1983 cases—is not "outcome determinative" in the sense that we used that term when we held that Wisconsin's notice-of-claim statute could not be applied to defeat a federal civil rights action brought in state courts under § 1983. *Felder*, 487 U. S., at 153. The failure to comply with the Wisconsin statute in *Felder* resulted in a judgment dismissing a complaint that would not have been dismissed—at least not without a judicial determination of the merits of the claim—if the case had been filed in a federal court. One of the primary grounds for our decision was that, because the notice-of-claim requirement would "frequently and predictably produce different outcomes" depending on whether § 1983 claims were brought in state or federal court, it was inconsistent with the federal interest in uniformity. *Id.*, at 138.[11]

---

[10] It does warrant observation that Rule 12(a) of the Idaho Appellate Rules provides that the State Supreme Court may grant permission "to appeal from an interlocutory order or decree . . . which is not otherwise appealable under these rules, but which involves a controlling question of law as to which there is substantial grounds for difference of opinion and in which an immediate appeal . . . may materially advance the orderly resolution of the litigation." Presumably, petitioners could have sought review under this permissive provision, and the Idaho Supreme Court might have granted review if, in the view of that court, the officials' claim to immunity was so substantial that the suit should not proceed.

[11] See also *Brown* v. *Western R. Co. of Ala.*, 338 U. S. 294, 296–299 (1949) (Federal Employers' Liability Act (FELA) pre-empted different state pleading requirements when effect was to defeat plaintiff's cause of action); *Garrett* v. *Moore-McCormack Co.*, 317 U. S. 239, 243–244 (1942) (federal Jones Act pre-empted different state burden of proof regarding releases when effect was to defeat plaintiff's cause of action).

Petitioners' reliance on *Felder* is misplaced because "outcome," as we used the term there, referred to the ultimate disposition of the case. If petitioners' claim to qualified immunity is meritorious, there is no suggestion that the application of the Idaho rules of procedure will produce a final result different from what a federal ruling would produce. Petitioners were able to argue their immunity from suit claim to the trial court, just as they would to a federal court. And the claim will be reviewable by the Idaho Supreme Court after the trial court enters a final judgment, thus providing petitioners with a further chance to urge their immunity. Consequently, the postponement of the appeal until after final judgment will not affect the ultimate outcome of the case.

Petitioners' second argument for pre-emption of the state procedural Rule is that the Rule does not adequately protect their right to prevail in advance of trial. In evaluating this contention, it is important to focus on the precise source and scope of the federal right at issue. The right to have the trial court rule on the merits of the qualified immunity defense presumably has its source in § 1983, but the right to immediate appellate review of that ruling in a federal case has its source in § 1291. The former right is fully protected by Idaho. The latter right, however, is a federal procedural right that simply does not apply in a nonfederal forum.[12]

The locus of the right to interlocutory appeal in § 1291, rather than in § 1983 itself, is demonstrated by our holding

---

[12] Petitioners' reliance on *Dice* v. *Akron, C. & Y. R. Co.*, 342 U. S. 359 (1952), is therefore misplaced. In *Dice* we held that the FELA preempted a state rule denying a right to a jury trial. In that case, however, we made clear that Congress had provided *in FELA* that the jury trial procedure was to be part of claims brought under the Act. *Id.*, at 363 (citing *Bailey* v. *Central Vermont R. Co.*, 319 U. S. 350, 354 (1943)). In this case, by contrast, Congress has mentioned nothing about interlocutory appeals in § 1983; rather, the right to an immediate appeal in the federal court system is found in § 1291, which obviously has no application to state courts.

in *Johnson* v. *Jones*, 515 U. S. 304 (1995). In that case, government officials asserting qualified immunity claimed entitlement to an interlocutory appeal of a District Court order denying their motion for summary judgment on the ground that the record showed a genuine issue of material fact whether the officials actually engaged in the conduct that constituted a clear violation of constitutional law. *Id.*, at 307–308. We concluded that this circumstance was different from that presented in *Mitchell*, 472 U. S., at 528, in which the subject of the interlocutory appeal was whether a given set of facts showed a violation of clearly established law, and held that although § 1291 did allow an interlocutory appeal in the latter circumstance, such an appeal was not allowed in the former.

In so holding, we acknowledged that "whether a district court's denial of summary judgment amounts to (a) a determination about pre-existing 'clearly established' law, or (b) a determination about 'genuine' issues of fact for trial, it still forces public officials to trial." 515 U. S., at 317. But we concluded that the strong "countervailing considerations" surrounding appropriate interpretation of § 1291 were of sufficient importance to outweigh the officials' interest in avoiding the burdens of litigation.

The "countervailing considerations" at issue here are even stronger than those presented in *Johnson*. When preemption of state law is at issue, we must respect the "principles [that] are fundamental to a system of federalism in which the state courts share responsibility for the application and enforcement of federal law." *Howlett*, 496 U. S., at 372–373. This respect is at its apex when we confront a claim that federal law requires a State to undertake something as fundamental as restructuring the operation of its courts.[13] We therefore cannot agree with petitioners that

[13] We have made it quite clear that it is a matter for each State to decide how to structure its judicial system. See, *e. g.*, *M. L. B.* v. *S. L. J.*, 519 U. S. 102, 111 (1996) (States under no obligation to provide appellate re-

§ 1983's recognition of the defense of qualified immunity pre-empts a State's consistent application of its neutral procedural rules, even when those rules deny an interlocutory appeal in this context.

The judgment of the Supreme Court of the State of Idaho dismissing petitioners' appeal is therefore affirmed.

*It is so ordered.*

---

view) (citing cases); *Kohl* v. *Lehlback*, 160 U. S. 293, 299 (1895) ("[T]he right of review in an appellate court is purely a matter of state concern"); *McKane* v. *Durston*, 153 U. S. 684, 688 (1894) ("[W]hether an appeal should be allowed, and if so, under what circumstances or on what conditions, are matters for each State to determine for itself").