[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 07-14074
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 4, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-60862-CV-JAL

STERLING THOMAS COWART,

Plaintiff- Appellee
Cross-Appellant,

versus

DEPUTY ARMANDO ENRIQUE,
BROWARD COUNTY SHERIFF DEPUTY #8706,
JEFF POOLE,
BROWARD COUNTY SHERIFF DEPUTY #9421,

Defendants- Appellants,
Cross-Appellees.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(February 4, 2009)

Before TJOFLAT and CARNES, Circuit Judges, and BOWEN,* District Judge.

_____

* Honorable Dudley H. Bowen, Jr., United States District Judge for the Southern District of
Georgia, sitting by designation.

PER CURIAM:

Deputies Armando Enrique and Jeff Poole, Defendants in the case below, appeal the judgment entered against them in the district court for violations of Plaintiff Sterling Thomas Cowart's rights under 42 U.S.C. §1983. Specifically, Appellants argue that the district court erred when it instructed the jury that an "unreasonable entry" by the deputies onto Cowart's front yard could constitute a violation of his Fourth Amendment rights. Deputies Enrique and Poole also appeal the decision of the district court to allow the jury to award damages for Cowart's criminal defense attorney's fees and costs, physical and emotional injury, and pain and suffering based on the "unreasonable entry" violation. Appellee cross-appeals on two issues. The first is whether the district court erred in refusing Cowart's proposed jury instruction that would have informed the jury that the deputies' entry onto his property without a warrant or Cowart's permission rendered his subsequent arrest unconstitutional as a matter of law. In response to this cross-appeal, the Deputies reassert their claim to qualified immunity, initially raised in the district court and denied. The second issue is whether the court erred in creating an inconsistent verdict form and then exacerbated the error by denying Cowart's motion to reconcile the verdict. Because we hold that the Appellants should have been granted qualified immunity prior to trial, we need not address the

2

other issues raised in the appeal and cross-appeal.

The Florida Department of Agriculture [FDOA] is authorized by Florida law to inspect and remove plants for the purpose of controlling plant pests and noxious weeds. Fla. Stat. § 581.031. On February 7, 2002, the FDOA, through its Agent Mark Fagan, was conducting a removal of citrus trees that it had determined were either infected or had been exposed to citrus canker, a plant pest, on the street where Cowart resided with his life-partner, Denyse Powell. When Agent Fagan approached the residence, Powell demanded to see a warrant, but Fagan maintained that he did not need a warrant to enter the property and remove the citrus tree located in the front yard. Fagan returned to his vehicle and summoned the assistance of the Broward County Sheriff's Department. Contemporaneously, Powell called Cowart home from work. Deputies Enrique and Poole responded to the call of Agent Fagan and were confronted by Cowart on the front lawn when they arrived. The Deputies entered Cowart's front yard, whereupon he informed them that they could not take his tree without a warrant and that unless they had a warrant, they must "get off his property." The Deputies then deployed pepper spray into Cowart's eyes to subdue him before tackling him to the ground and arresting him. Cowart was ultimately charged with a misdemeanor under Fla. Stat. § 581.211(c), for obstructing Agent Fagan's efforts to carry out official duties.

After Cowart was arrested, the charges against him were dismissed by the state court. Cowart then filed a § 1983 action in the Florida state court alleging violation of his civil rights under the Fourth Amendment. The Deputies removed the case to the United States District Court for the Southern District of Florida. Each Deputy submitted an answer to Cowart's complaint, and in their answers, the Deputies claimed the defense of qualified immunity. The parties entered a pre-trial stipulation in which they agreed that all actions taken by both deputies in this case were under color of state law and that each Deputy acted "within the course and scope of his employment with BSO." The Deputies never moved to dismiss the case via a Rule 12(b)(6) motion or a motion for summary judgment. Instead, several days before the trial began, the Deputies moved for judgment as a matter of law on the basis of qualified immunity. At the conclusion of Cowart's case in chief, the Deputies again moved for judgment as a matter of law on the basis of qualified immunity, and the court reserved judgment. The Deputies renewed their motion at the close of all evidence, and the court again reserved judgment.

The pre-trial stipulation mentions only one disputed issue of law or fact bearing on Cowart's civil rights: his right not to be falsely arrested. Nevertheless and over the Deputies' repeated objections, the district court charged the jury on two potential civil rights violations: lack of probable cause for the arrest and

4

"unreasonable entry." The jury returned a verdict in favor of the Deputies on the issue of probable cause and in favor of Cowart on the issue of "unreasonable entry." The district court then issued an electronic or "paperless" order denying all of the Deputies' Rule 50 motions.

We find that the district court erred in failing to grant the Deputies' motion for judgment as a matter of law on the basis of qualified immunity. Qualified immunity "turns on an issue of law, and our review is *de novo*." Courson v. McMillian, 939 F.2d 1479, 1486 (11th Cir. 1991) (citations omitted). The doctrine shields state officials who are sued under § 1983 from liability "for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). As the United States Supreme Court noted in Johnson v. Frankell, this immunity shields state officials not only from damages liability but also "from the burdens of trial." Johnson v. Frankell, 520 U.S. 911, 915, 117 S.Ct. 1800, 1803 (1997). For this reason, an order by a federal district court rejecting a qualified immunity defense may be immediately appealed under 28 U.S.C. § 1291. Mitchell v. Forsyth, 472 U.S. 511, 524-30, 105 S.Ct. 2806, 2814-18 (1985). In other words, a district court has the duty to rule on the issue of qualified immunity as soon as the defense is

5

demonstrated, be it on a motion to dismiss, for summary judgment, for judgment as a matter of law, or "at any stage in the proceedings." See Johnson, 520 U.S. at 915, 117 S.Ct. at 1803. Indeed, this Circuit has previously stated that "the Supreme Court has urged us to apply the affirmative defense of qualified immunity at the earliest possible stage in litigation because the defense is an immunity from suit and not from damages only." Marsh v. Butler County, 268 F.3d 1014, 1022 (11th Cir.2001) (internal citations omitted).

Qualified immunity is an affirmative defense that must be pled. If the defendant fails to plead the defense, a court may deem the defense waived. Moore v. Morgan, 922 F.2d 1553, 1557 (11th Cir. 1991). In this case, both defendants raised the defense in their initial answer to the complaint. This Circuit has held that raising the defense in an answer is sufficient to defeat claims of waiver. See Hill v. Dekalb Regional Youth Detention, 40 F.3d 1176, 1184 (11th Cir. 1994) (overruled on other grounds).

A defense of qualified immunity first requires the government official seeking immunity to establish that he was acting within the scope of his discretionary authority. Courson, 939 F.2d at 1488. In this case, the parties stipulated that each officer was acting within the scope of his employment as a deputy for the Broward County Sheriff's Department. Therefore, the burden shifts

to the Cowart to prove that qualified immunity did not apply.

The Supreme Court has articulated an objective-reasonableness test for evaluating the applicability of a qualified immunity defense. Harlow, 457 U.S. at 818, 102 S.Ct. at 2738. The Court has further instructed that we should engage in a two-step analysis. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001). The first step calls for us to determine whether a constitutional right has been violated. Id. at 201, 121 S. Ct. at 2156. If we find that the government official claiming immunity has violated the plaintiff's constitutional right, then we proceed to determine whether this constitutional right was clearly established at the time the official committed the violation. Id.

First we address whether the Deputies violated Cowart's rights under the Fourth Amendment. The Supreme Court has held that administrative searches of private dwellings intrude upon the interests protected by the Fourth Amendment and as such, require a warrant. Camara v. Municipal Court of City & County of San Francisco, 387 U.S. 523, 534, 87 S.Ct. 1727, 1733 (1967). In this case, it is undisputed that neither the Deputies nor Agent Fagan obtained a warrant before arriving at Cowart's residence. However, there is a dispute as to whether Cowart's front yard, which was the location of the citrus tree and scene of Cowart's arrest, is the kind of place "so intimately tied to the home itself that it should be placed

7

under the home's 'umbrella' of Fourth Amendment protection." See United States v. Dunn, 480 U.S. 294, 301, 107 S.Ct. 1134, 1140 (1987). Such area is known as "curtilage." Id. The Supreme Court has directed us to evaluate questions of curtilage according to four factors:

> the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.

Id. at 301, 107 S. Ct. at 1139. Applying these factors to Cowart's front yard, we have little difficulty concluding that the location of the citrus tree and the confrontation leading to Cowart's arrest did not occur within the curtilage of his dwelling. Cowart's front yard was easily in view from a public street and sidewalk. Although he surrounded his yard with a simple wooden fence, the fence consists of only two parallel horizontal rails supported by intermittent posts, the whole thing being no more than three and one-half feet tall. This fence hardly obscures a person's field of vision when standing outside Cowart's property. All of these observations are clear to us upon viewing Plaintiff's Composite Exhibit 1, which is a collection of photographs taken by a neighbor throughout the incident. Many of the photographs show the public street and sidewalk in the foreground and the citrus tree in the background, indicating that the photographer was able to clearly view both the tree and the confrontation leading to the arrest from outside

8

Cowart's property, notwithstanding the presence of the low rail fence that ran along the sidewalk. Therefore, we find that the Cowart was not entitled to Fourth Amendment protection while standing in his driveway or front yard, and therefore the Deputies committed no constitutional violation.

Even though we find that Cowart did not have his Fourth Amendment rights violated, we will continue. Government agents are entitled to qualified immunity if their conduct did not violate any clearly established statutory or constitutional rights of which a reasonable officer would have known. Hudson v. Hall, 231 F.3d 1289, 1294 (11th Cir. 2000). Specifically, "the law preexisting [the government officials'] supposedly wrongful act [must have been] already established to such a high degree that every objectively reasonable official standing in [their] place would be on notice that what the defendant official was doing would be clearly unlawful given the circumstances." Pace v. Capobianco, 283 F.3d 1275, 1282 (11th Cir. 2002). Appellee Cowart cannot provide a citation to any case law, statute, or constitutional provision that clearly established a warrant requirement for the execution of citrus-canker removal at the time of the incident that gave rise to this action.[1] He cites the decisions of the United States Supreme Court in

---

[1] At the time of Cowart's arrest, there were two decisions from the Florida District Court of Appeals dealing in some respect with citrus canker removal: Florida Dep't of Agric. & Consumer Servs. v. Miami-Dade County, 790 So. 2d 555, 26 Fla. L. Weekly D1788 (Fla. Dist. Ct. App. 2001) and Florida Dep't of Agric. & Consumer Servs. v. Miami-Dade County, 790 So. 2d 559, 26 Fla. L.

Camara and See for the general proposition that administrative entries are not authorized as to private property. However, neither of these cases is sufficiently analogous to the conduct of Deputies Enrique and Poole. Camara involved a routine inspection of the interior of a private dwelling by the San Francisco Department of Public Health for violations of the city's housing code. Camara, 387 U.S. at 526, 87 S.Ct. at 1729. See involved an attempted routine inspection conducted by the City of Seattle Fire Department of a locked commercial warehouse for violations of the city's fire code. See v. City of Seattle, 387 U.S. 541, 541, 87 S.Ct. 1737, 1738 (1967). Neither of these cases involve outdoor property, harmful agricultural pests, or inspections conducted pursuant to state programs to contain or eradicate pests. As such, these decisions did not provide adequate notice to Deputies Enrique and Poole that their arrest of Cowart was contrary to law.

The fact that there is no specific case on point holding the Deputies' conduct unlawful does not end the inquiry. In Hope v. Pelzer, the United States Supreme Court held that although "earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is firmly established, they are not necessary to such a finding." 536 U.S. 730, 741, 122 S.Ct.

_____

Weekly D1789 (Fla. Dist. Ct. App. 2001). Neither of these two decisions lends any support to Cowart's position.

10

2508, 2516 (2002). Instead, the "salient question" that must be answered is whether the state of the law at the time of the alleged violation provided government officials with "fair warning." Id. Cowart cannot take refuge in the Supreme Court's decision in Hope. We hold that it is not within the meaning of "fair warning" for the Deputies to be required to apply the precedents of Camara and See to the Florida Citrus Canker Law amendments contained in § 581 and to anticipate that these provisions would one day be interpreted by the courts to require a warrant. Our previous cases have held exactly this: "public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases." Adams v. St. Lucie County Sheriff's Dep't, 962 F. 2d 1563, 1575 (11th Cir. 1992), *approved en banc* 998 F.2d 923 (11th Cir.1993). The United States Supreme Court held as much in Defillippo:

> Police are charged to enforce laws until and unless they are declared unconstitutional. The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality-with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws. Society would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement.

Michigan v. Defillippo, 443 U.S. 31, 38, 99 S.Ct. 2627, 2632 (1979). Florida law gives agents of the FDOA inspection powers "to enter into or upon any place . . . if determined by the department to pose a threat to agricultural or public interest of

11

this state." Fla. Stat. § 581.031(15)(a). The statute does not specifically require the agent to obtain a warrant before conducting an inspection.[2] Deputies Enrique and Poole acted with the understanding that Agent Fagan did not need a warrant to remove the tree in Cowart's yard. Their reliance on the statute also led them to believe that Cowart committed a crime when he refused to allow the tree to be taken without a warrant. However, the Deputies' mistake will not subject them to liability for civil damages. The Deputies enforced a statute as it was enacted and therefore had no "fair warning" that strict adherence to the Florida statutes would have them run afoul of the Constitution.

The judgment of the District Court is VACATED. The case is remanded to the district court with instructions to enter judgment for the Defendants.

---

[2]Although the Florida Supreme Court eventually affirmed the state court of appeals' decision in Haire that a warrant was required, at least in some circumstances, this decision was not issued until two years after Cowart was arrested, and the state court of appeals decision was not decided until eleven months after Cowart's arrest. Haire v. Florida Dep't of Agric. & Consumer Servs., 870 So. 2d 774, 29 Fla. L. Weekly S67 (Fla. 2004) (affirming Florida Dep't of Agric. & Consumer Servs. v. Haire, 836 So. 2d 1040, 28 Fla. L. Weekly D245 (Fla. Dist. Ct. App. 2003)).