Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/03/2016 08:11 AM CDT

Christopher M. Payne, appellant,
v. Nebraska Department of
Correctional Services
et al., appellees.
___ N.W.2d ___

Filed May 3, 2016.    No. A-15-016.

1. **Right to Counsel.** In civil cases, there is no constitutional or statutory right to appointed counsel.
2. **Constitutional Law: Courts: States.** The question of when federal law should displace state law in state court proceedings under the Supremacy Clause is governed by the reverse-*Erie* doctrine set out in *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).
3. **Federal Acts: Courts: States.** State courts hearing federal law claims may generally utilize their own procedural rules so long as they do not infringe upon the substantive federal law at issue.
4. ____: ____: ____. When a state court hears a claim based on federal law, the state's procedural rules may be preempted by federal law if they fail to protect substantive federal rights.
5. **Constitutional Law: Federal Acts: Courts: States.** The Supremacy Clause imposes on state courts a constitutional duty to proceed in such manner that all the substantial rights of the parties under controlling federal law are protected.
6. **Federal Acts: Courts: States.** Where a claim heard in state court is based upon a federal statute and that statute does not dictate procedure, the state court conducts a preemption analysis to determine whether a particular state procedure is preempted by federal law. This preemption analysis considers the federal interest of uniformity in adjudicating federal rights and the countervailing state interest in administering its courts.
7. **Public Officers and Employees: Immunity: Liability.** Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established

- 2 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
24 NEBRASKA APPELLATE REPORTS
PAYNE v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 24 Neb. App. 1

statutory or constitutional rights of which a reasonable person would have known.

8. ____: ____: ____. Qualified immunity consists of two inquiries: (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct.

9. ____: ____: ____. The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.

10. ____: ____: ____. Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law.

11. ____: ____: ____. The dispositive inquiry for qualified immunity is whether it would be clear to a reasonable officer in the agent's position that his conduct was unlawful in the situation he confronted.

12. **Rules of Evidence: Other Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

13. **Trial: Evidence: Appeal and Error.** A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion.

14. **Judgments: Words and Phrases.** A judicial abuse of discretion requires that the reasons or rulings of a trial judge be clearly untenable, unfairly depriving a litigant of a substantial right and a just result.

15. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the District Court for Lancaster County: JODI NELSON, Judge. Affirmed.

Christopher M. Payne, pro se.

Douglas J. Peterson, Attorney General, and Bijan Koohmaraie for appellee.

INBODY, PIRTLE, and RIEDMANN, Judges.

Riedmann, Judge.

## INTRODUCTION

Christopher M. Payne is an inmate housed at the Tecumseh State Correctional Institution (TSCI) in Tecumseh, Nebraska. He filed suit against the Nebraska Department of Correctional Services (the Department) and several of its employees in their individual and official capacities after being prevented from corresponding with a person housed in a secure treatment facility. After pretrial motions and orders disposed of Payne's case against the Department and the State employees in their official capacities, he tried his remaining claims against the State employees in their individual capacities under 42 U.S.C. § 1983 (2012) before a jury. Following Payne's case in chief, the district court for Lancaster County, Nebraska, sustained the defendants' motion for a directed verdict and dismissed the suit. Payne appeals from this order.

After review of the record and the parties' factual and legal arguments, we affirm the judgment of the district court.

## BACKGROUND

The TSCI mailroom procedures manual prohibits TSCI's inmates from receiving mail from inmates housed at correctional institutions. On August 3, 2011, Payne received a notice of returned mail stating that a letter mailed from Rodger Robb in Moose Lake, Minnesota, had been returned to the sender. A copy of the envelope was attached to the returned mail notice, showing that the letter had been stamped "Mailed From A Secure Treatment Facility." The returned mail notice stated that the reason for the return was that "[t]he mail [was] from another correctional facility and the writer is not approved to correspond."

Catherine Peters, a mailroom employee at TSCI, testified that she received the letter and believed that it was sent from a correctional institution because of the stamp labeling it from a "Secure Treatment Facility." She then followed the procedure for dealing with mail that is sent from a correctional institution; that is, she checked to see if Payne's

- 4 -

Decisions of the Nebraska Court of Appeals
24 Nebraska Appellate Reports
PAYNE v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 24 Neb. App. 1

file contained authorization to correspond with the sender, and when it did not, she returned the letter and sent a notice to Payne.

After receiving the notice of returned mail, Payne submitted an "Inmate Interview Request" form with a message for Peters. The message reads: "Several times now Warden Britten has told you people that I am authorized to receive letters from . . . Robb, because he is not in a correctional facility nor an inmate, yet you must be dense because you again rejected his letter. If you can't follow instructions get a new job!" Fred Britten, the warden, replied directly to this message, stating, "Research indicates that . . . Robb's return address is that of a sex offender program. Additionally, see attached envelope which states that it was mailed from a 'secure treatment facility.' You do not have authorization to correspond with this individual."

An administrative assistant to the warden testified that she performed the research on the Moose Lake facility and drafted the warden's response to the initial inmate interview request. She had no specific recollection of what research she conducted, although she was certain that she had researched the facility and stated she may have performed an Internet search. The warden had no specific recollection of hearing her describe her research or doing any research of his own.

On August 12, 2011, Payne submitted an "Informal Grievance Resolution Form" stating that Robb is not an inmate in a correctional facility, but, rather, a patient in a treatment facility, and that correspondence should be allowed. A prison official responded in September, stating, "You do not have authorization to correspond with this individual."

Payne then submitted "Step One" (Step 1) grievance forms on September 20 and 25, 2011, stating that Robb was not an "inmate" nor in a "correctional institution," but that he is a patient in a mental health facility. Assistant warden Michelle Hillman responded to one of these Step 1 grievance forms, and the warden responded to the other. Both concurred with

- 5 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
24 NEBRASKA APPELLATE REPORTS
PAYNE v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 24 Neb. App. 1

the informal grievance response, and neither allowed Payne to correspond with Robb.

The assistant warden testified that at the time she completed the grievance response, she believed that the Moose Lake facility was actually a correctional facility, because the word "secure" was used on the envelope to describe it. She testified that a prison file would typically accompany grievances and contain additional information on which she would have based her response. The warden also testified that when the issue was brought to him, he believed that the term "secure treatment facility" referred to a prison. Both the warden and the assistant warden stated that they had no reason to believe that the information provided to them by TSCI staff about the nature of the Moose Lake facility was incorrect.

In October 2011, Payne submitted a "Step Two" (Step 2) grievance. A Step 2 grievance is a central office appeal of the result of a Step 1 grievance. Step 2 grievances are forwarded to the general counsel for the prison in the central office, where staff attorneys independently prepare responses. Payne's Step 2 grievance states that Robb is a patient in a Minnesota mental health facility and argues that civilly committed persons in secure treatment facilities are not inmates or prisoners. The central office response to the Step 2 grievance states:

> You want to receive mail from a friend in Minnesota. You claim he is a patient at the mental health facility in Minnesota. The TSCI staff was informed he is an inmate in a correctional facility. If this is inaccurate, you should provide information to your unit staff showing the nature of the facility.

After receiving the response to his Step 2 grievance, Payne submitted another inmate interview request in October 2011 to the warden stating that Robb is in a mental health facility. Payne attached a copy of the warden's response stating that research had indicated that Robb was in a sex offender program in a secure treatment facility as "proof" that Robb was

not an inmate. The warden responded by stating that the envelope was mailed from a "'<u>secure treatment facility</u>.'"

Testimony indicates that the warden had previously acknowledged that Payne could correspond with mental health patients in the Lincoln Regional Center in Nebraska who were civilly committed and not inmates. The warden stated that although he had visited the Lincoln Regional Center, he had no personal knowledge of the Moose Lake facility or its nature.

Payne filed this suit in April 2012 under 42 U.S.C. § 1983 seeking damages for violations of his First Amendment rights against the State employees in their individual capacities, and additionally seeking equitable relief against them in their official capacities and against the Department.

In January 2013, the Department granted Payne permission to correspond with Robb. In light of this decision, the district court granted summary judgment to the defendants on Payne's claims for equitable relief. The district court denied the remaining defendants' motion for summary judgment as to Payne's First Amendment claims against the employees in their individual capacities.

Payne presented his case in chief to a jury. At the close of Payne's case, the defendants moved for a directed verdict, which the district court granted, reasoning that they were entitled to qualified immunity and that Payne had failed to establish damages. Payne appeals from this determination.

### ASSIGNMENTS OF ERROR

Payne assigns that the district court erred in (1) denying Payne's request for appointment of counsel, (2) finding that the defendants are entitled to qualified immunity, (3) sustaining defendants' objection to evidence of prior bad acts, and (4) finding that Payne failed to prove a prima facie case for damages.

### STANDARD OF REVIEW

On appeal from an order of a trial court dismissing an action at the close of plaintiff's evidence, this court must determine

- 7 -

Decisions of the Nebraska Court of Appeals
24 Nebraska Appellate Reports
PAYNE v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 24 Neb. App. 1

whether the cause of action was proved and must accept plaintiff's evidence as true, together with reasonable conclusions deducible from that evidence. *Russell v. Norton*, 229 Neb. 379, 427 N.W.2d 762 (1988).

A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion. *Sturzenegger v. Father Flanagan's Boys' Home*, 276 Neb. 327, 754 N.W.2d 406 (2008). In particular, whether evidence is admissible for any proper purpose under Neb. Evid. R. 404(2), Neb. Rev. Stat. § 27-404 (Cum. Supp. 2014), rests within the discretion of the trial court. *Sturzenegger v. Father Flanagan's Boys' Home, supra*.

When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Pettit v. Nebraska Dept. of Corr. Servs.*, 291 Neb. 513, 867 N.W.2d 553 (2015).

## ANALYSIS

*Appointment of Counsel.*

[1] Payne first assigns that the district court erred in denying his request for appointment of counsel. At issue is whether state or federal law controls appointment of counsel in this action. In civil cases, there is no constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940 (8th Cir. 2013). However, 28 U.S.C. § 1915 (2012), the statute governing federal judicial procedure for proceedings in forma pauperis, allows a federal district court discretion to appoint counsel to any person unable to afford an attorney. Although § 1915 leaves appointment of counsel to the discretion of the trial court, a motion for appointment of counsel under § 1915 requires the court to consider factors including the complexity of the case and the abilities of the litigant requesting counsel. *Childress v. Walker*, 787 F.3d 433 (7th Cir. 2015). Nebraska law, by contrast, allows for appointment of counsel only when a person's physical liberty may be in jeopardy. *Poll v. Poll*, 256 Neb. 46, 588 N.W.2d 583 (1999), *disapproved on other*

*grounds, Gibilisco v. Gibilisco*, 263 Neb. 27, 637 N.W.2d 898 (2002).

[2] The question of when federal law should displace state law in state court proceedings under the Supremacy Clause is governed by the "reverse-*Erie* doctrine." Kevin M. Clermont, *Reverse*-Erie, 82 Notre Dame L. Rev. 1 (2006). The reverse-*Erie* doctrine refers to the case *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938), which dealt with the question of when federal courts should apply state court law. The reverse-*Erie* doctrine, then, deals with when and how broadly state courts hearing federal claims should apply federal law.

[3-5] State courts hearing federal law claims may generally utilize their own procedural rules so long as they do not infringe upon the substantive federal law at issue. See *Johnson v. Fankell*, 520 U.S. 911, 919, 117 S. Ct. 1800, 138 L. Ed. 2d 108 (1997) (general rule "'"bottomed deeply in belief in the importance of state control of state judicial procedure, is that federal law takes the state courts as it finds them"'"). See, also, *Chapman v. Union Pacific Railroad*, 237 Neb. 617, 622-23, 467 N.W.2d 388, 393 (1991) ("[i]n disposing of a claim controlled by the Federal Employees' Liability Act, a state court may use procedural rules applicable to civil actions in the state court unless otherwise directed by the act, but substantive issues . . . are determined by the provisions of the act and interpretative decisions of federal courts"). However, procedural rules may be preempted by federal law if they fail to protect substantive federal rights. See *Felder v. Casey*, 487 U.S. 131, 108 S. Ct. 2302, 101 L. Ed. 2d 123 (1988). The Supremacy Clause imposes on state courts a constitutional duty to proceed in such manner that all the substantial rights of the parties under controlling federal law are protected. *Felder v. Casey, supra*.

[6] Where the federal statute at issue does not dictate procedure, courts conduct a preemption analysis to determine whether a particular state procedure is preempted by federal

law. This preemption analysis considers the federal interest of uniformity in adjudicating federal rights and the countervailing state interest in administering its courts. *Johnson v. Fankell, supra*; Clermont, *supra*.

For example, in *Felder v. Casey, supra*, a plaintiff filed a civil rights suit against a police officer under 42 U.S.C. § 1983 in Wisconsin state courts. The Wisconsin Supreme Court ordered the suit to be dismissed because the plaintiff had not complied with a Wisconsin notice-of-claim statute that requires notice to public officials of an intent to file suit 120 days prior to the suit being filed. *Felder v. Casey, supra*. The U.S. Supreme Court found that the Wisconsin notice-of-claim statute was preempted by federal law in § 1983 claims brought in state court because the notice-of-claim statute impermissibly burdened the plaintiff's substantive federal rights protected by § 1983 and would also cause many cases to have different outcomes depending upon whether the case was filed in federal or state court. *Felder v. Casey, supra.*

In contrast, in *Johnson v. Fankell*, 520 U.S. 911, 717 S. Ct. 1800, 138 L. Ed. 2d 108 (1997), the U.S. Supreme Court upheld a state court's use of its rule prohibiting interlocutory appeals from a denial of qualified immunity in a case brought under 42 U.S.C. § 1983. In *Johnson v. Fankell, supra*, a former employee of an Idaho state liquor store filed suit in state court arguing that her federal civil rights were violated when her employment was terminated. *Id.* The Idaho Liquor Dispensary officials who were named defendants filed a motion for dismissal on the grounds of qualified immunity, which the trial court denied. *Id.* The officials then filed an interlocutory appeal—an appeal of the trial court's qualified immunity denial before the case went to trial. Although federal rules of civil procedure would have allowed the interlocutory appeal, Idaho court rules prohibited this appeal. *Id.* In upholding the state court's use of its own interlocutory appeal rule, the U.S. Supreme Court noted that unlike the notice-of-claim statute at issue in *Felder v. Casey, supra*,

the difference between the state and federal rules on interlocutory appeals would not result in differing outcomes of the final disposition of the case. *Johnson v. Fankell, supra*. In *Felder v. Casey, supra*, a plaintiff who filed in state court and who had not complied with the notice-of-claim statute would have his case dismissed, while the same plaintiff in federal court would not. In contrast, in *Johnson v. Fankell, supra*, a defendant whose meritorious qualified immunity claim was initially denied by the trial court would ultimately be entitled to the same relief on appeal under either the federal or Idaho rule; only the timing of the appeal would change. The U.S. Supreme Court additionally noted that the federal right to an interlocutory appeal does not come from § 1983 itself, but is instead embedded in a separate rule of federal civil procedure that "simply does not apply in a nonfederal forum." *Johnson v. Fankell*, 520 U.S. at 921. The U.S. Supreme Court also stated that it has a "normal presumption against pre-emption" that was "buttressed by the fact that [the decision at issue] rested squarely on a neutral state Rule regarding the administration of the state courts." *Id.*, 520 U.S. at 918. It additionally recognized the strong interest of states in operating their own courts. *Johnson v. Fankell, supra*.

Given these contours of the analysis, we conclude that the Nebraska rule on appointment of counsel is not preempted by the federal procedural rule in § 1915. Like the interlocutory appeal decision at issue in *Johnson v. Fankell*, the district court's denial of appointed counsel "rests squarely on a neutral state Rule regarding the administration of the state courts." 520 U.S. at 918. The State has strong interests in this area of administering the courts, particularly given that appointed counsel results in significant costs to the state court system. Additionally, the Nebraska rule on appointment of counsel does not significantly burden a plaintiff's substantive federal rights under § 1983. Even under the federal rule, there is no statutory or constitutional right to appointed counsel in a civil case. *Ward v. Smith*, 721 F.3d 940 (8th Cir. 2013). Appointment of

counsel is purely discretionary even in the federal system. See *id.* Additionally, like the rule at issue in *Johnson v. Fankell*, the federal rule on appointment of counsel comes not from § 1983 itself but instead from a federal procedural statute that "does not apply in a nonfederal forum." See 520 U.S. at 921.

Finally, Nebraska's rule on appointment of counsel does not implicate the concerns with uniformity of outcome that were present in *Felder v. Casey*, 487 U.S. 131, 108 S. Ct. 2302, 101 L. Ed. 2d 123 (1988). Although appointment of counsel would certainly assist any pro se litigant, applying the federal rule would not guarantee that counsel would be appointed to the litigant in federal court, much less that the result would differ between federal and state court.

We further note that other states to consider this issue have also determined that their rules on appointment of counsel are applicable in § 1983 actions brought in state court. For example, the Louisiana Court of Appeal, when considering the same question, determined:

> Our exhaustive search of jurisprudence nationwide, however, reveals at least three states, Georgia, New Mexico, and Pennsylvania, have found the statute [(§ 1915's provision on appointment of counsel)] is not applicable to state court actions.
>
> We agree with those courts that this statute is procedural, not substantive, in nature and thus is not applicable to state courts.

*Lay v. McElven*, 691 So. 2d 311, 313 (La. App. 1997).

Similarly, the Court of Appeals of New Mexico, when addressing the question, determined that the application of state law on the appointment of counsel was not an error, particularly given that appointment of counsel is a privilege and not a right in civil actions. *Archuleta v. Goldman*, 107 N.M. 547, 761 P.2d 425 (N.M. App. 1987).

For these reasons, we hold that the district court did not err in applying the Nebraska rule on appointment of counsel and in denying court-appointed counsel.

- 12 -

Decisions of the Nebraska Court of Appeals
24 Nebraska Appellate Reports
PAYNE v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 24 Neb. App. 1

*Qualified Immunity.*

[7-10] Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). Qualified immunity consists of two inquiries: (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. See *id.* The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. *Id.* Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law. *Potter v. Board of Regents*, 287 Neb. 732, 844 N.W.2d 741 (2014).

Payne does not argue that the prison procedures prohibiting inmate-to-inmate mail are constitutionally invalid; rather, he alleges that the defendants "knew or should have known" that Robb was not an inmate in a correctional facility and that they "display[ed] reckless and/or callous disregard for and indifference to Payne's rights."

However, all of the evidence in the record demonstrates that the prison officials acted under a consistent and reasonable belief that Robb was an inmate in a correctional institution. The mailroom employee testified that when she returned the letter from Robb, she believed that the stamp labeling it from a "Secure Treatment Facility" indicated that the letter had been sent from a prison. She then followed the procedure for handling mail from an inmate by checking Payne's file for authorization to correspond with the sender and then providing Payne with a returned mail notice and copy of the envelope. Her belief that the letter was sent from a correctional facility because of the stamp labeling it from a "Secure Treatment

- 13 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
24 NEBRASKA APPELLATE REPORTS
PAYNE v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 24 Neb. App. 1

Facility" was reasonable under the circumstances. Qualified immunity protects officials from reasonable mistakes of fact. See *Pearson v. Callahan, supra*.

Similarly, the evidence in the record demonstrates that the warden and his assistant warden reasonably relied upon the envelope's stamp and the research of their colleagues over the assertions of Payne as to whether Robb was an inmate when he sent the letter.

The evidence in the record demonstrates that Payne's initial response was hostile in nature and asserted that the warden had given him permission to correspond with Robb, an assertion not supported by evidence in the record. The warden's administrative assistant testified that she conducted research and drafted the suggested response stating that Robb was in a sex offender program in a secure treatment facility and that Payne was not authorized to correspond with him. The assistant warden testified that when she responded to one of Payne's grievances, she relied upon the word "secure" on the envelope and the information in the inmate file that would have accompanied the grievance to believe that Robb was writing from a correctional institution. Even if mistaken, her understanding of the nature of the Moose Lake facility was reasonable given the context.

Similarly, the warden testified that he believed that a secure treatment facility referred to a prison and that he had no actual familiarity with the out-of-state Moose Lake facility. Documentation from Payne's Step 2 grievance further demonstrates that the TSCI staff operated under the belief that Robb was an inmate in a correctional institution. After receiving Payne's grievance and independently researching the issue, the central office recognized Payne's claim that Robb was a patient at the mental health facility in Minnesota, but stated that "[t]he TSCI staff was informed he is an inmate in a correctional facility." The central office response further advised Payne that "[i]f this is inaccurate, you should provide information to your unit staff showing the nature of the facility."

- 14 -

Decisions of the Nebraska Court of Appeals
24 Nebraska Appellate Reports
PAYNE v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 24 Neb. App. 1

The records in evidence of Payne's inmate interview requests and grievance show that Payne initially asserted that he had been given permission by the warden to contact Robb and then repeatedly asserted that Robb was not an inmate. The only documentary information that Payne submitted on the nature of the Moose Lake facility was the copy of the envelope and copies of the warden's responses that referred to Moose Lake as a "'secure treatment facility.'" Given that the officials believed that the term "secure treatment facility" was synonymous with prison and understood TSCI staff's research to have confirmed their beliefs, it was reasonable for Payne's presentation of the envelope not to settle the issue.

[11] So while Payne's complaint alleges that the defendants "knew or should have known" that Robb was not an inmate in a correctional facility and that they "display[ed] reckless and/or callous disregard for and indifference to Payne's rights," the evidence adduced does not support the allegation. At most, it supports a finding of negligence in their failure to investigate further, which is an insufficient basis upon which to deny qualified immunity. See *Procunier v. Navarette*, 434 U.S. 555, 98 S. Ct. 855, 55 L. Ed. 2d 24 (1978) (upholding grant of summary judgment to defendants on basis of qualified immunity where § 1983 claim for violation of prisoner's First Amendment rights by interference with mail were premised on defendants' negligent acts). Because Payne's evidence at the conclusion of his case in chief failed to establish that it would be clear to a reasonable prison employee in these employees' positions that their conduct was unlawful, it was proper for the district court to direct a verdict on the issue of qualified immunity. See *Wood v. Moss*, ___ U.S. ___, 134 S. Ct. 2056, 188 L. Ed. 2d 1039 (2014) (reiterating that dispositive inquiry for qualified immunity is whether it would be clear to reasonable officer in agent's position that his conduct was unlawful in situation he confronted).

Accordingly, we agree with the trial court that given the uncontroverted facts in the record, the employees acted

- 15 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
24 NEBRASKA APPELLATE REPORTS
PAYNE v. NEBRASKA DEPT. OF CORR. SERVS.
Cite as 24 Neb. App. 1

according to their reasonable, albeit mistaken, belief that Robb was an inmate and that a secure treatment facility was a prison. Therefore, they are entitled to qualified immunity and the district court did not err in directing a verdict in favor of the defendants.

*Evidence of Prior Lawsuits.*

Payne next assigns that the district court erred in preventing him from eliciting testimony from the mailroom employee regarding how many lawsuits had been filed against her since she began working at TSCI. Payne asserts that prior lawsuits would be relevant under rule 404 to show knowledge and argues that she had prior knowledge that her actions were violating Payne's constitutional rights. The district court sustained the State's objection to this question on the grounds of relevancy.

[12-14] Rule 404(2) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion. *Sturzenegger v. Father Flanagan's Boys' Home*, 276 Neb. 327, 754 N.W.2d 406 (2008). A judicial abuse of discretion requires that the reasons or rulings of a trial judge be clearly untenable, unfairly depriving a litigant of a substantial right and a just result. *Id.*

Payne did not make an offer of proof regarding this line of questioning, so we can only speculate as to what type of information may have been revealed had Payne been allowed to question the mailroom employee regarding prior litigation. We found above that the employee is entitled to qualified

immunity because her belief that the out-of-state Moose Lake secure treatment facility was a correctional institution was a reasonable belief, and her actions in withholding Robb's mail were reasonable in light of that belief. We find no abuse of discretion in the district court's determination that prior litigation in which she was involved was irrelevant to her knowledge of whether Moose Lake was a correctional facility for purposes of qualified immunity. Accordingly, this assignment of error is without merit.

*Damages.*

[15] Payne finally assigns that the district court erred in finding that he failed to establish a prima facie case for damages. Because the issue of qualified immunity disposes of this suit, we do not reach this issue. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Facilities Cost Mgmt. Group v. Otoe Cty. Sch. Dist.*, 291 Neb. 642, 868 N.W.2d 67 (2015).

## CONCLUSION

After conducting a reverse-*Erie* preemption analysis, we agree with the district court that Nebraska law governs appointment of counsel in § 1983 claims brought in Nebraska state courts. We further find no abuse of discretion in the district court's refusal to receive evidence under rule 404 and agree with the district court's determination that the defendants are entitled to qualified immunity. Because the qualified immunity analysis is dispositive of the case, we do not reach Payne's assignment of error regarding damages. Accordingly, we affirm the order of the district court.

AFFIRMED.