FILED

MAR 15 2017

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**
**OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP No. CC-16-1041-LNTa |
| | ) | |
| CLIFFORD ALLEN BRACE, JR., | ) | Bk. No. 6:11-26154-SY |
| | ) | |
| Debtor. | ) | Adv. No. 6:11-02053-SY |
| _____ | ) | |
| | ) | |
| CLIFFORD ALLEN BRACE, JR., | ) | |
| INDIVIDUALLY AND AS THE | ) | |
| TRUSTEE OF THE CRESCENT TRUST | ) | |
| DATED JULY 30, 2004; ANH N. | ) | |
| BRACE, INDIVIDUALLY AND AS | ) | |
| THE TRUSTEE OF THE CRESCENT | ) | |
| TRUST DATED JULY 30, 2004, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| STEVEN M. SPEIER, | ) | |
| Chapter 7 Trustee, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued and Submitted on January 19, 2017
at Pasadena, California

Filed - March 15, 2017

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Scott Ho Yun, Bankruptcy Judge, Presiding

_____

Appearances:     Stephen R. Wade argued for appellants; Matthew W.
                 Grimshaw of Marshack Hays LLP, argued for
                 appellee.

_____

Before:  LAFFERTY, TAYLOR, and NOVACK,* Bankruptcy Judges.

_____

     * Hon. Charles Novack, United States Bankruptcy Judge for
the Northern District of California, sitting by designation.

LAFFERTY, Bankruptcy Judge:

**INTRODUCTION**

The bankruptcy court found that Debtor's transfers of marital property into a trust for the benefit of his non-debtor spouse were avoidable as actually fraudulent conveyances. In a separate unpublished memorandum decision, we affirmed that aspect of the bankruptcy court's ruling.

Relying on a recent California Supreme Court decision, <u>Valli v. Valli (In re Marriage of Valli)</u>, 58 Cal. 4th 1396, 1400 (2014), the bankruptcy court also determined that while avoidance of the transfers restored title to the couple as joint tenants, under California's community property presumption, the entirety of each property was recoverable by the estate.

Appellants contend that, notwithstanding <u>Valli</u>, the community property presumption applies only in the context of property division in a marital dissolution or legal separation. They assert that the bankruptcy court should have applied the record title presumption of Cal. Evid. Code § 662, rather than the community property presumption of Cal. Fam. Code § 760, to find that the real properties were held separately by the spouses and to conclude that only Debtor's separate interest in the properties was recoverable by the estate.

For the reasons set forth below, we AFFIRM the bankruptcy court's determination that the community property presumption applies in this context.

**FACTS**

During their marriage, Debtor and his non-debtor spouse,

Anh N. Brace, acquired their residence in Redlands, California, a rental property in San Bernardino, California, and a parcel of real property in Mohave, Arizona (collectively, the "Properties"). Appellants took title to each of the Properties as "husband and wife as joint tenants."

On July 30, 2004, Debtor formed the Crescent Trust. The instrument creating the Crescent Trust states that it is an irrevocable trust and that Debtor is the sole trustee; Ms. Brace is the beneficiary of the trust. The trust instrument was not recorded. Shortly thereafter, Debtor executed and had recorded trust transfer deeds transferring his interests in the Redlands and San Bernardino properties into the Crescent Trust for no consideration. At the time of the transfers, Debtor was a defendant in litigation in San Bernardino County Superior Court, and a judgment in that litigation was entered a few weeks after the transfers occurred.

Debtor filed a chapter 7[1] petition on May 16, 2011, and Robert L. Goodrich was appointed chapter 7 trustee ("Trustee").[2] In December 2011 Trustee filed an adversary proceeding against Appellants, individually and in their capacities as trustees of the Crescent Trust,[3] seeking: a declaration that the Properties were property of the bankruptcy estate; a judgment quieting title to the Properties in the bankruptcy estate; turnover of any of

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, "Rule" references are to the Federal Rules of Bankruptcy.

[2] Appellee Steven M. Speier was substituted as chapter 7 trustee after Mr. Goodrich resigned in December 2015.

[3] Ms. Brace is not a trustee of the Crescent Trust.

the Properties determined to be property of the estate; avoidance and recovery of Debtor's transfers of the Redlands and San Bernardino properties into the Crescent Trust as actually and/or constructively fraudulent transfers under Cal. Civ. Code § 3439.04(a) (collectively, the "Fraudulent Transfer Claims"); and revocation of Debtor's discharge under §§ 727(d)(1) and (d)(2).

After trial on the Fraudulent Transfer Claims, the bankruptcy court ruled in favor of Trustee on the actually fraudulent transfer and alter ego claims, finding, among other things, that the transfers of the Redlands and San Bernardino properties into the Crescent Trust were avoidable and that all three Properties were recoverable in their entirety by the estate. The bankruptcy court found not credible Appellants' testimony that they had intended the Properties to be held separately and that the transfers were done for estate planning purposes.

After the bankruptcy court entered judgment on the Fraudulent Transfer Claims, Appellants timely moved to amend the judgment, arguing that the judgment should have provided that the Properties, as recovered, were owned one half by Debtor and one half by Ms. Brace as tenants in common[4] and that only Debtor's interests in the Properties, but not Ms. Brace's, were property of the estate. The bankruptcy court disagreed, finding

> that although these properties are returned to joint
> tenancy between the Debtor and Defendant Anh Brace, the

---

[4] It is not clear from the record why Appellants argued that the Properties should be deemed held as tenants in common, given that they had originally taken title as joint tenants.

-4-

properties were acquired by the Debtor and Anh Brace during the marriage with community assets and they presumptively constitute community property under applicable law.  Defendants failed to establish that the Redlands Property, San Bernardino Property, or [Mohave] Property were not community in nature and, therefore, they constitute property of the Estate pursuant to 11 U.S.C. § 541 and are subject to administration by the Estate.

Second Amended Judgment, ¶ 6.  Thereafter the bankruptcy court entered an amended judgment clarifying that although the Properties were restored to joint tenancy as a matter of title, they were community property under California law and were thus property of the estate.

Appellants timely appealed the amended judgment.[5]

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(E), (H), and (J).  We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in determining that, upon avoidance of the transfers of the Properties, those properties were held by Appellants as community property and were thus property of the estate.

## STANDARDS OF REVIEW

We review the bankruptcy court's findings of fact for clear error, and its conclusions of law de novo.  <u>Carrillo v. Su (In re Su)</u>, 290 F.3d 1140, 1142 (9th Cir. 2002).  A finding is

---

[5]  Because the amended judgment did not dispose of all the claims in the adversary proceeding, the parties obtained a second amended judgment from the bankruptcy court that contained a certification pursuant to Rule 54(b) that there was no just reason to delay entry of a final judgment on the Fraudulent Transfer Claims.

clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573 (1985) (citation omitted).

We review de novo the bankruptcy court's interpretation of state law. Salven v. Galli (In re Pass), 553 B.R. 749, 756 (9th Cir. BAP 2016). In interpreting California law, we are bound by decisions of the California Supreme Court, including reasoned dicta. See Muniz v. United Parcel Serv., Inc., 738 F.3d 214, 219 (9th Cir. 2013); Johnson v. Fankell, 520 U.S. 911, 916 (1997) (a federal tribunal has no authority to place a construction on a state statute different from the one rendered by the highest court of the State). And, as we discuss more fully at Subsection C.3. below, though we are ordinarily bound by prior decisions of the Ninth Circuit on all matters, if, subsequent to a Ninth Circuit decision interpreting state law, the highest court of the state has issued a decision disagreeing with the Ninth Circuit's interpretation, we are not bound to follow the Ninth Circuit's interpretation of that state law any more than a subsequent Ninth Circuit panel would be. See Miller v. Gammie, 335 F.3d 889, 900 (9th Cir. 2003) (noting that the Circuit is not bound by its prior decisions when a "relevant court of last resort has undercut the reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable."); Cf. F.D.I.C. v. McSweeney, 976 F.2d 532, 535-36 (9th Cir. 1992) (in the absence of intervening controlling authority, a three-judge Ninth Circuit panel is bound by its

prior decisions interpreting state and federal law).

**DISCUSSION**

We look to relevant non-bankruptcy law to determine the nature and extent of a debtor's interest in property. <u>Butner v. United States</u>, 440 U.S. 48, 55 (1979); <u>Hanf v. Summers (In re Summers)</u>, 332 F.3d 1240, 1242 (9th Cir. 2003). Here the relevant law is California state law. Whether restoration of the Properties to the transferor(s) on avoidance of the transfers warranted, in this case, a finding that the Properties were community assets subject to administration by the estate in their entirety requires an analysis of the presumptions found in California statutes, the application of those presumptions by California courts, and their application to the facts presented here.

**A.   California Presumptions Affecting Property Ownership**

In this appeal, we are concerned with two California presumptions affecting determinations of the ownership of property. The first is Cal. Evid. Code § 662 (the "record title presumption"), which provides generally that "[t]he owner of the legal title to property is presumed to be the owner of the full beneficial title. This presumption may be rebutted only by clear and convincing proof."

The second is CFC § 760 (the "community property presumption"), which provides, "except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property."

The community property presumption applies to property

acquired during marriage unless it is: (1) traceable to a separate property source; (2) acquired by gift or bequest; or (3) earned or accumulated while the spouses are living separate and apart. Valli, 58 Cal. 4th at 1400. The community property presumption may be rebutted by evidence that the spouses agreed to recharacterize, or "transmute" the property from community to some other form of ownership. A transmutation is not valid unless "made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected." CFC § 852(a).[6]

The record title presumption promotes California's public policy in favor of the stability of titles to property. In re Marriage of Haines, 33 Cal. App. 4th 277, 294 (1995). And there can be no question that, as a general rule, this presumption supports the integrity of property transactions.

On the other hand, the community property presumption "is perhaps the most fundamental principle of California's community property law." Valli, 58 Cal. 4th at 1408-09 (Chin, J., concurring). The community property presumption protects spouses from undue influence in transactions between one another. See id. at 1411-12 (concluding that the community property presumption serves the same purpose as the fiduciary duties imposed on spouses under CFC § 721(b)). Moreover, this presumption also protects the integrity of transactions undertaken between spouses and between a marital community and

---

[6] For transmutations occurring prior to 1985, a transmutation may be shown by evidence of an oral or implied agreement to do so. See Woods v. Sec. First Nat'l Bank of Los Angeles, 46 Cal. 2d 697, 701 (1956).

-8-

third parties, by creating and enforcing consistent and reliable "rules of the road," rebuttable by written and contemporary evidence to the contrary, for characterizing property ownership. In the absence of such clear and consistent rules the parties, and the courts called upon to decide disputes between them, would be forced to revert to admittedly unreliable evidence concerning dubious assertions of intent and prior understandings.

The record title presumption and the community property presumption each promote fundamentally important, but nonetheless fundamentally different, public policies favoring the integrity of property transactions. And as the California Supreme Court stated in Valli, because of the differences between these competing policies, which turn on the longstanding rules in California concerning ownership of property by married couples, the policy in favor of the general stability of titles embodied in the record title presumption is "largely irrelevant to characterizing property acquired during the marriage in an action between the spouses." Id. at 1410. As such, the Valli court determined that Cal. Evid. Code § 662 "has no place in the characterization of property in actions between spouses." Id. at 1409. Thus, after Valli, there is no doubt that the community property presumption controls in marital dissolution or separation proceedings. What Valli did not address was the applicability of the community property presumption in other contexts.

Of course, these presumptions come into play only when a dispute arises about the parties' respective rights and liabilities as to a particular marital asset. The question

raised by this appeal is whether the same rules concerning presumptions should apply to disputes concerning the ownership of property arising in other contexts (such as bankruptcy) that require a determination of the respective spouses' rights in marital property.

Appellants contend that the community property presumption applies only in the marital dissolution or separation context and that the record title presumption applies in all other disputes over marital property involving third parties.

We disagree. Although there may be instances where the record title presumption could apply to marital property, for the reasons explained below we hold that, as a general rule, California's community property presumption applies in disputes in bankruptcy involving the characterization of marital property. Our holding is based on controlling California case law interpreting the relevant statutes and the policies expressed therein, which we believe apply equally in disputes between spouses over property division and in bankruptcy matters that require a determination of the characterization of marital property.

**B.  Appellants' Arguments**

Because the Appellants' arguments have shifted somewhat during the course of this dispute, in an apparent attempt to respond to the California Supreme Court's holding in Valli, we believe it would be helpful to describe in some detail the evolution of Appellants' arguments.

In the bankruptcy court, Appellants did not dispute that the community property presumption applied; instead they argued that

the fact that they took title as joint tenants rebutted the community property presumption, citing Summers. There, the Ninth Circuit held that, under California law, the community property presumption is rebutted when a married couple acquires property from a third party as joint tenants and that the written transmutation requirements of CFC § 852(a) apply only to interspousal transactions and not to transactions whereby a married couple acquires property from a third party. In re Summers, 332 F.3d at 1245. In its ruling on Appellants' motion to amend, the bankruptcy court pointed out to Appellants that the holding in Summers had recently been explicitly rejected by the California Supreme Court in Valli.

On appeal, and in response to the bankruptcy court's amended judgment that relied on Valli in rejecting Summers, Appellants have modified their argument to assert that the bankruptcy court should have applied the record title presumption of Cal. Evid. Code § 662 in the first instance. Importantly, they assert that no transmutation took place, only that the form of taking title establishes their intent to hold their interests in the Properties separately. Nevertheless, we examine the Ninth Circuit's analysis in Summers and the California Supreme Court's rejection of the Summers analysis to explicate fully the issues presented here.

**C.    The Transmutation Doctrine in California Courts**

    **1.    <u>In re Summers</u>: The Ninth Circuit's Pre-<u>Valli</u> Interpretation of California's Transmutation Requirements**

In <u>Summers</u>, the Ninth Circuit held that under California law, the community property presumption is rebutted when a married couple acquires property from a third party as joint tenants. 332 F.3d at 1243-44. In that case, the spouses and their daughter acquired real property, taking title as "[husband and wife], husband and wife and [daughter], an unmarried woman, all as joint tenants." <u>Id.</u> at 1242. All three parties eventually filed separate bankruptcy petitions, with the wife filing first. The trustee in wife's bankruptcy case argued that the property was community property and was thus property of wife's bankruptcy estate. The bankruptcy court applied the community property presumption and found that it had been rebutted because the spouses had taken title as joint tenants; thus only the wife's interest was property of her bankruptcy estate. This Panel affirmed, as did the Ninth Circuit Court of Appeals.

Citing several California Courts of Appeal decisions, the Ninth Circuit held that under California law the transmutation requirements applied only to interspousal transactions. In so holding, the <u>Summers</u> court relied on the California courts' definition of "transmutation" as "an **interspousal transaction or agreement** that works a change in the character of the property." <u>In re Summers</u>, 332 F.3d at 1244 (citing <u>In re Marriage of Cross</u>, 94 Cal. App. 4th 1143, 1147 (2001) (emphasis added)). The court

noted that seemingly contrary California cases all involved interspousal transactions and thus did not mandate a different outcome.[7]

**2.   Valli: The California Supreme Court rejects Summers.**

In Valli, the California Supreme Court expressly rejected the Ninth Circuit's interpretation of California law, holding that California's transmutation statutes also applied to transactions in which spouses acquired property from a third party.  58 Cal. 4th at 1405-06.

The relevant facts in Valli are not complex.  During a marriage husband had used community funds to purchase a life insurance policy on his life, naming wife as the sole owner and beneficiary.  At dissolution, husband argued that the insurance policy was community property because it was purchased with community funds and because the transmutation requirements of CFC § 852 had not been complied with.  Wife argued that the policy was her separate property because husband had put the policy solely in her name, changing the policy's character from community property to separate property.  She contended that the transmutation requirements did not apply to the purchase of the life insurance policy because it was not an interspousal transaction.  The California Supreme Court rejected this argument.

The California Supreme Court observed that the California legislature adopted the written transmutation requirements

_____

[7]   See Bolton v. MacDonald (Estate of MacDonald), 51 Cal. 3d 262; McGirr v. Barneson (In re Marriage of Barneson), 69 Cal. App. 4th 583 (1999); Bibb v. Bibb (Estate of Bibb), 87 Cal. App. 4th 461 (2001).

-13-

because, under prior law, spouses' ability to transmute property by oral or implied agreement generated extensive litigation in dissolution proceedings and "encouraged spouses to transform a passing comment into an agreement or even to commit perjury by manufacturing an oral or implied transmutation." Valli, 58 Cal. 4th at 1401 (citation omitted). Thus, the legislature adopted the written requirements to "remedy problems which arose when courts found transmutations on the basis of evidence the Legislature considered unreliable." Id. (citation omitted).

Next, the California Supreme Court observed that interpreting the transmutation statutes to apply only to interspousal transactions would "produce arbitrary and irrational results that the Legislature could not have intended." Id. It gave hypothetical examples to illustrate the point. Id. at 1401-04. The California Supreme Court expressly rejected the definition of transmutation relied upon by the Ninth Circuit Court of Appeals in Summers: "an **interspousal** transaction or agreement which works a change in the character of the property." (emphasis added). The California Supreme Court noted that none of the cases relied upon in Summers for this definition involved the question of whether a transaction in which property was acquired from a third party was subject to the transmutation requirements. In fact, Summers was the first case to consider the question, followed by In re Marriage of Brooks & Robinson, 169 Cal. App. 4th 176, 191-92 (2008), in which a California Court of Appeal also concluded that the transmutation requirements did not apply to property acquired by a spouse in a transaction with a third person. The California Supreme Court found neither case

-14-

persuasive insofar as they purport to exempt from the transmutation requirements purchases made by one or both spouses from a third party during the marriage. Neither decision attempts to reconcile such an exemption with the legislative purposes in enacting those requirements, which was [sic] to reduce excessive litigation, introduction of unreliable evidence, and incentives for perjury in marital dissolution proceedings involving disputes regarding the characterization of property. Nor does either decision attempt to find a basis for the purported exemption in the language of the applicable transmutation statutes.

Valli, 58 Cal. 4th at 1405.

The California Supreme Court expressly rejected the argument that the title presumption of Cal. Evid. Code § 662 applied in the circumstances in light of the important policies advanced by the community property presumption and transmutation requirements: "We need not and do not decide here whether [Cal. Evid. Code § 662] ever applies in marital dissolution proceedings. Assuming for the sake of argument that the title presumption may sometimes apply, it does not apply when it conflicts with the transmutation statutes." Id. at 1406.

**3. Subsequent bankruptcy decisions have applied Valli in bankruptcy disputes concerning ownership of marital assets.**

California bankruptcy courts have interpreted Valli to require application of the community property presumption outside the marital dissolution context. See In re Obedian, 546 B.R. 409 (Bankr. C.D. Cal. 2016); Wolf v. Collins (In re Collins), 2016 WL 4570413 (Bankr. S.D. Cal. Aug. 29, 2016).

In Obedian, a married couple purchased real property during the marriage, taking title as joint tenants. Thereafter, a judgment was entered against husband only. During wife's

-15-

subsequent chapter 7 proceeding, she moved to avoid the judgment lien, which required the bankruptcy court to determine whether the real property was held in joint tenancy or as community property. Relying on Valli's holding that the transmutation statutes override the title presumption, the bankruptcy court applied the community property presumption, finding that the presumption was not rebutted even though the parties had taken title as joint tenants. The bankruptcy court rejected the chapter 7 trustee's contention that the title presumption under Cal. Evid. Code § 662 applied. In so doing, the bankruptcy court implicitly recognized that the policies embodied in California community property statutes, as articulated in Valli, applied equally to disputes over marital property that arise in the bankruptcy context.

In this matter the bankruptcy court expressly considered whether it was bound to follow the Ninth Circuit Court of Appeals' holding in Summers, or whether it should follow the intervening and contrary California Supreme Court holding in Valli. In determining that it need not follow Summers, the bankruptcy court relied on Miller v. Gammie, 335 F.3d 889 (9th Cir. 2003). In that case, the Ninth Circuit held that the goal of preserving the consistency of the circuit's decisions

> must not be pursued at the expense of creating an inconsistency between our circuit decisions and the reasoning of state or federal authority embodied in a decision of a court of last resort.
>
> We hold that the issues decided by the higher court need not be identical in order to be controlling. Rather, the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable.

-16-

*Id.* at 900. In such a circumstance, the circuit instructed that any future three-judge panel of the court of appeals and **district courts** "should consider themselves bound by the intervening higher authority and reject the prior opinion of this court as having been effectively overruled." *Id.*

In deciding to apply *Valli* to the present dispute, rather than to rely on *Summers*, or to await a subsequent decision by the Ninth Circuit that would have followed *Valli*, the bankruptcy court followed the directive of *Miller v. Gammie* in the same manner that a district court would undoubtedly have done. We see no error in this analysis.[8]

---

[8] The bankruptcy court in *Obedian* reached a similar conclusion, relying on different authority. The court noted that, as a general rule, Ninth Circuit published authority is binding within the Circuit to the same extent as Supreme Court precedent. However, if state courts subsequently disagree with the prior panel, the later Ninth Circuit panel is not bound to follow the prior panel; in interpreting state law, the Ninth Circuit must follow the decisions of the state's highest court. *Obedian*, 546 B.R. at 421 (citing *Johnson*, 520 U.S. at 916; *Muniz*, 738 F.3d at 219).

The bankruptcy court in *Obedian* noted that *Valli* involved a marital dissolution proceeding between the spouses and not with a third party. However,

> the California Supreme Court in *Valli* stated its express disagreement with the Ninth Circuit's reasoning in *Summers*, observing that *Summers*, in exempting a spousal purchase from a third party from the marital property transmutation requirements of California law, failed to reconcile the exemption in the property transmutation statutes with their legislative purposes, failed to find a basis for the exemption in the statute's language, and was inconsistent with three California Court of Appeals decisions that stated or held that the transmutation statutes applied to one spouse's purchases from a third party during marriage.

(continued...)

**D. California case law, principles of statutory construction, and public policy all support the conclusion that the community property presumption may apply in contexts other than disputes between spouses.**

Appellants contend that Summers and Valli are irrelevant to our analysis because those cases involved transmutation questions, whereas here, Appellants do not contend that any transmutation took place; rather, they argue that under the record title presumption, the fact that they took title as joint tenants establishes the presumption that the spouses held their interests in the Properties separately. In support of their position, Appellants cite principles of statutory construction, state and bankruptcy cases decided prior to Valli, and the concurrence in Valli.

We find none of these arguments persuasive.

**1. Principles of statutory construction do not support Appellants' argument.**

As an initial matter, Appellants argue that the record title presumption should apply as a matter of statutory construction, based on their interpretation of the inter-workings of sections of the California Family Code. We disagree, for numerous reasons.

Appellants note that CFC § 750 authorizes spouses to hold title to property as community property, or as joint tenants or

[8](...continued)
Id. at 421-22 (citing Valli, 58 Cal. 4th at 1405). The bankruptcy court thus concluded that it should follow the California Supreme Court's holding in Valli in interpreting California law rather than Summers. Id. (citing Muniz, 738 F.3d at 219).

tenants in common.[9]  And CFC § 2581 provides that, regardless of how a couple takes title, for purposes of property division in a dissolution or legal separation, all property is presumed to be community property.[10]  Appellants contend that the "specific" provision of CFC § 2581 takes precedence over the "general" community property presumption of CFC § 760.  Put another way, Appellants interpret the "except as otherwise provided by statute" language in CFC § 760 as a reference to CFC § 2581, thus limiting the community property presumption to litigation regarding property division in a dissolution or legal separation.

We cannot agree.  A specific statutory provision does prevail over a general one relating to the same subject.  Pac. Lumber Co. v. State Water Res. Control Bd., 37 Cal. 4th 921, 942 (2006).  However, this canon of statutory construction actually supports the conclusion that the community property presumption prevails over the title presumption.  See Valli, 58 Cal. 4th at 1412-13 (Chin, J., concurring) ("[T]he [community property] presumption is a specific statutory presumption found within California's community property law, not the more general presumption found in section 662.").  The concurrence also noted

---

[9]  CFC § 750 provides that "[s]pouses may hold property as joint tenants or tenants in common, or as community property, or as community property with a right of survivorship."

[10]  CFC § 2581 provides:

For the purpose of division of property on dissolution of marriage or legal separation of the parties, property acquired by the parties during marriage in joint form, including property held in tenancy in common, joint tenancy, or tenancy by the entirety, or as community property, is presumed to be community property.

-19-

that CFC §§ 760 and 2581 are not in conflict: CFC § 760 is the "familiar presumption that property acquired during marriage is community property," while CFC § 2581 "is a presumption, found in a statute within the community property law and fully consistent with the general presumption, that specifically governs real property designated as joint tenancy. . . . Both of these presumptions favor a finding of community property, and thus they are compatible." Id. at 1412. Moreover, if the community property presumption applied only for purposes of property division in a dissolution or legal separation, CFC § 760 would be unnecessary; and we do not construe statutory provisions so as to render them superfluous. Shoemaker v. Myers, 52 Cal. 3d 1, 22 (1990).

Moreover, two other provisions of the Family Code bolster the conclusion that the Legislature intended the community property presumption to apply in disputes with parties outside the marital couple: first, CFC § 852 provides that a transmutation of real property is not effective as to third parties without notice unless it is recorded; and second, CFC § 851 provides that "[a] transmutation is subject to the laws governing fraudulent transfers." These provisions presuppose that, as a general rule, third parties are entitled to rely on the community property presumption in transactions involving marital property.

Appellants' contrary interpretation--that CFC § 760 applies only in the dissolution or separation context--is also belied by the Law Revision Commission Comments to CFC § 760, which reveal that the phrase "except as otherwise provided by statute"

-20-

replaced specific statutory provisions enumerated in former Cal. Civ. Code § 5110, and that the "major exceptions to the basic community property rule are those relating to separate property" such as CFC §§ 130 ("separate property" defined in Section 760 et seq.), 770 (separate property of married person), 771 (earnings and accumulations while living separate and apart), 772 (earnings and accumulations after judgment of legal separation), and 781 (cases where damages for personal injury are separate property). CFC § 760, L. Revision Comm'n Cmt. Notably, there is no mention of CFC § 2581 as a limitation on the community property presumption.

Nor, candidly, can we readily discern the significance of Appellants' reference to CFC § 750's enumeration of the different forms in which married couples may hold property as supporting an argument that CFC § 760's presumption is limited to dissolution contexts. CFC § 750, like § 2581, is not "in conflict" with § 760--indeed, it is not in conflict with anything. Rather, its recitation of the manner in which property may be held is merely descriptive--it might as well say, "some numbers may be even, and some numbers may be odd, depending on the number."

For all of these reasons, we find Appellants' statutory construction arguments unpersuasive.

**2.    Prior case law does not compel a different result.**

Appellants cite Hansford v. Lassar, 53 Cal. App. 3d 364 (1975), overturned on other grounds due to legislative action, and Fadel v. DCB United LLC (In re Fadel), 492 B.R. 1 (9th Cir. BAP 2013), in support of their argument that the record title presumption should apply. In both of these cases, which were

-21-

non-dissolution cases decided before Valli, the courts applied the record title presumption to marital property rather than the community property presumption. Importantly though, in both of these cases, one spouse had taken title as "sole and separate property" and the other spouse had executed and recorded a document relinquishing his or her interest in the subject property. Thus, in In re Fadel, the spouses effectively transmuted the character of the property when it was acquired (thereby satisfying the requirements of CFC § 852); the title documents reflected an unequivocal intent to hold the properties separately. In that circumstance, applying the record title presumption was appropriate. Moreover, Hansford, and the authorities cited therein, have largely been superceded by subsequent statutes and case law; to the extent they conflict with Valli, they are no longer good law.

**3.    The Valli concurrence does not compel the conclusion that the community property presumption is limited to the marital dissolution context.**

Lastly, Appellants attempt to bolster their argument that Valli cannot be applied outside of the marital dissolution context by pointing to language in the concurring opinion in which three of the justices recognized in dicta the possibility that Cal. Evid. Code § 662 might apply in litigation between spouses and third parties:

> Significantly, the statutory presumption regarding property in the form of joint tenancy applies "[f]or the purpose of division of property on dissolution of marriage." (Fam. Code, § 2581; see Civ. Code, former § 5110.) This language suggests that rules that apply to an action between the spouses to characterize property acquired during the marriage do not necessarily apply to a dispute between a spouse and a third party.

-22-

*Valli*, 58 Cal. 4th at 1413 (Chin, J., concurring).

We do not agree that the quoted language either limits the holding in *Valli* strictly to marital dissolutions or makes the policies inherent in the *Valli* decision inapplicable to the disputes concerning property ownership that arise in bankruptcy.

As an initial matter, we note that the decision in *Valli* was unanimous and that the comments on which Appellants rely are set forth in a concurrence joined by less than a majority of the court. Thus, even were the concurring justices expressing concerns with the holding in *Valli*--and for the reasons set forth below, we do not believe that they were--such concerns would not have limited the holding of this decision by the highest authority in California.

Second, we note the inescapable facts that in *Valli* the California Supreme Court expressly addressed and rejected the interpretation of California law relied on in *Summers*--and that *Summers* clearly arose in a bankruptcy context. Surely, if the California Supreme Court were concerned to limit the scope of its holding regarding the applicability of presumptions concerning marital property, it could easily have done so when rejecting the rationale for a decision that dealt with a dispute concerning a bankruptcy estate's interest in marital property.

Third, we are reluctant to read the quoted comment as broadly as Appellants suggest, i.e., that the community property presumption of CFC § 760 could never apply in circumstances other than marital dissolution. We note that while the concurring justices in *Valli* did not describe with specificity the types of matters in which the record title presumption should continue to

-23-

apply, they did reinforce a fundamental distinction that the opinion also noted, i.e., the difference between the purposes of the general evidentiary title presumption of Cal. Evid. Code § 662 and the policies behind the default presumptions of CFC 750 et seq. See discussion at subsection A, supra.

**4. The policies expressed in <u>Valli</u> compel the conclusion that the community property presumption must apply here.**

As noted in both the majority opinion and the concurrence in <u>Valli</u>, the purpose behind the property ownership presumptions of the California Family Code is to create a uniform and reliable set of "rules of the road," application of which will serve to avoid the unsavory but all too common circumstance in which one member of the community seeks through unreliable or even perjurious evidence to bolster an unfair and inaccurate assertion of property ownership during a dispute. See <u>Valli</u>, 58 Cal. 4th at 1405. That the California Family Code presumptions are entirely consistent with the expectation that, in most instances, a married couple in this state acquiring property during a marriage, except in certain enumerated instances, will intend to hold and will hold the property as a community asset, is hardly surprising. Further, the fact that such presumptions are rebuttable by written evidence of intent to hold property as other than a community asset preserves the ability of a married couple to deviate from the expectation of community ownership for any number of legitimate, but necessarily verifiable, reasons.

In light of the relatively light burdens imposed by such requirements, we find it hard to agree with Appellants' dire

predictions expressed during argument in this matter that our ruling will wreak havoc on marital communities throughout the state.

A rule that the community property presumption generally applies in disputes over rights to marital property is not in conflict with the policy of stability of titles expressed in Cal. Evid. Code § 662. In fact, uniform application of the community property presumption in matters involving marital property promotes stability of titles more reliably and predictively than would a rule that the community property presumption applies only in interspousal disputes. Parties examining record title will know that when record title indicates that property is held by married persons, it is community property regardless of the designation of form of title, unless there is also a written statement conforming with the transmutation statutes that indicates the parties intended to hold property in a different form.

Moreover, we believe that the Appellants' implied reliance on a distinction that they contend the court in Valli drew between the presumptions that should govern in a marital dissolution and those that should pertain to a dispute involving either or both members of the community and third party creditors misconceives the issues that arise when one or both members of a community files a bankruptcy.

As we are all aware, immediately upon the filing of a bankruptcy, an estate is created, comprised of all assets of the debtor, wherever located; and a trustee is appointed whose duty it is promptly to collect and hold those assets, and to maximize

their value for the benefit of the debtor's creditors.  In taking such actions the trustee is, in the first instance, stepping into the shoes of the debtor, and succeeds to the property interests of the debtor, as provided by nonbankruptcy (state) law.[11]  While the trustee may act for the benefit of creditors, he is in the first instance merely exploiting the existing property rights of the debtor.  To suggest that different presumptions of marital property ownership must apply in bankruptcy is to ignore a fundamental purpose of the bankruptcy system: to permit the trustee to assert the rights of the debtor in property for the benefit of the debtor's creditors.[12]

Appellants point to no policy that would be furthered by

_____

[11]  To be sure, the trustee may also exercise certain special rights created by, or incorporated into, the Bankruptcy Code, including, for example, the right to recover fraudulent transfers.  See §§ 544 and 548.  And in this context, it bears repeating that CFC § 852 contains an explicit requirement that certain transmutations be made in writing, and be recorded, to avoid the reach of California's Uniform Fraudulent Transfer Act.  See Subsection A, supra.

[12]  And, not to belabor the point, but it would be difficult to imagine a starker example of the need for consistent, reliable "rules of the road" to aid in the characterization of marital property in a dispute in bankruptcy than this case.  Although not elaborated in this Opinion, our companion Memorandum describes in great detail the pre-bankruptcy conduct of the Appellants that the trial court found was taken with intent to defraud creditors, as well as the trial court's conclusion that Appellants' evidentiary presentation concerning their bona fides was not credible in any respect.  Clearly, were Appellants proceeding on a theory that they had effected a transmutation of the ownership of the Properties, the trial court would have had ample justification to reject any such assertion, whether operating under the written documents requirements of CFC § 852 (enacted in 1985) or its predecessor rule, which still required credible evidence of a pre-existing arrangement or understanding.

-26-

treating marital property differently in disputes with a bankruptcy trustee. The community property presumptions and the transmutation statutes acknowledge that spouses stand in a confidential relationship, with its attendant risk of undue influence; these presumptions and provisions are intended to protect against that risk. And the transmutation statutes further protect married persons from the risk of unreliable evidence and incentives for perjury. As the <u>Valli</u> court held, these policy concerns apply equally in actions between spouses and in actions between spouses and third parties.

Because the bankruptcy trustee succeeds to the married debtor's interests and thus also to any dispute over the characterization of that marital property, failure to apply the community property presumption in such matters would produce inconsistent results without furthering any of the policies embodied in the relevant California Family Code provisions. In short, Appellants have demonstrated no convincing authority or plausible policy reason to conclude that the record title presumption should trump the community property presumption under the facts presented here.

Based on the foregoing, we hold that the bankruptcy court correctly applied the community property presumption. It is undisputed that the Properties were acquired during the marriage with community funds. Despite Appellants' assertion that there was no transmutation, the act of taking title as joint tenants was (if their testimony is to be believed) an attempt to recharacterize their interests in the Properties from community to separate. Under <u>Summers</u> and the California cases cited

therein, the act of taking title as joint tenants would have been effective to do so. But Valli explicitly abrogated Summers' holding that the transmutation requirements do not apply to transactions where property is acquired from a third party by a married couple. As such, Appellants had to provide additional evidence that they intended to hold their interests separately. Because the bankruptcy court found not credible Appellants' assertion that they intended to hold the Properties separately, Appellants failed to overcome that presumption notwithstanding that they originally took title to the Properties as joint tenants.[13]

## CONCLUSION

For all of these reasons, the bankruptcy court did not err in concluding that upon avoidance and recovery, the Properties were property of the estate subject to administration by Trustee. Accordingly, we AFFIRM.

---

[13] We note that Valli interpreted the community property presumption in light of CFC § 852's requirement of a written express declaration to prove a transmutation, finding that in light of that requirement, the manner in which a married couple takes title is insufficient by itself to rebut the presumption and that the record title presumption should not be applied when it conflicts with the transmutation statutes. Here, the writing requirement may not apply because CFC § 852 became effective in 1985. However, even if CFC § 852 does not apply, this does not mean that Valli is inapplicable: the only impact of the codification of the writing requirement was to modify the manner in which a party may rebut the community property presumption.