**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC-18-1333-LSTa |
| ALEKSANDR GOLDSHTADT, | Bk. No. 2:15-bk-12692-SK |
| Debtor. | Adv. No. 2:16-ap-01569-SK |
| EVGHENIA GAJIU, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| HOWARD M. EHRENBERG, Chapter 7 Trustee, | |
| Appellee. | |

Submitted Without Oral Argument August 12, 2019

Filed – September 4, 2019

Appeal from the United States Bankruptcy Court
for the Central District of California

---

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Honorable Sandra R. Klein, Bankruptcy Judge, Presiding

———————

Appearances:    Leslie A. Cohen and J'aime K. Williams of Leslie Cohen
Law PC on brief for Appellant; Daniel A. Lev and Asa S.
Hami of SulmeyerKuptez, A Professional Corporation on
brief for Appellee.

———————

Before: LAFFERTY, SPRAKER, and TAYLOR, Bankruptcy Judges.


**INTRODUCTION**

Evghenia Gajiu appeals the bankruptcy court's grant of summary

judgment in favor of the chapter 7[1] trustee, Howard Ehrenberg. The

judgment determined that real property owned by Ms. Gajiu and the

Debtor, her husband, is community property and thus property of the

estate. The bankruptcy court found that (1) the properties were presumed

to be community property despite the fact that they were held by the

couple as joint tenants, and (2) Ms. Gajiu did not produce evidence

sufficient to raise a genuine issue of material fact regarding the character of

the ownership of the properties.

We AFFIRM.

———————

[1]Unless specified otherwise, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules
of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of
Civil Procedure.

## FACTUAL BACKGROUND

During their marriage, Debtor and Ms. Gajiu purchased two parcels of real property in Los Angeles, California (the "Properties"). They took title to the Properties as "husband and wife as joint tenants." Specifically, the couple purchased property on Alla Road (the "Alla Property") in June 2008 and another property on Cardwell Place (the "Cardwell Property") in November 2013.

In September 2008, after purchasing the Alla Property but before purchasing the Cardwell Property, the couple entered into a post-nuptial agreement (the "Moldova Agreement"),[2] which provided, in relevant part, that each spouse's interest in any subsequently purchased real property would be determined by the amounts their respective relatives contributed toward the purchase.

In February 2015, Debtor filed for chapter 11 relief, listing the Properties on his schedules as jointly held with Ms. Gajiu.[3] About a year later, the bankruptcy court appointed Appellee Howard Ehrenberg as chapter 11 trustee ("Trustee"). Thereafter, on Trustee's motion, the

---

[2]In its ruling, the bankruptcy court referred to the post-nuptial agreement as the "Moldova Agreement" because the document was entered into in Moldova.

[3]Shortly before Trustee filed the adversary proceeding that is the subject of this appeal, Debtor filed an amended Schedule A. He left blank the column for designating form of ownership, and in the property description he inserted the phrase "Subject to claims/rights of Evghenia Gajiu (Debtor's spouse)."

3

bankruptcy court converted the case to chapter 7,[4] with Mr. Ehrenberg continuing in his capacity as trustee.

In December 2016, Trustee filed an adversary proceeding against Ms. Gajiu. In the First and Second Claims for Relief, Trustee sought authorization to sell both the estate's interests and Ms. Gajiu's interests in the Properties. Trustee's Third Claim for Relief sought a declaration of the parties' respective ownership interests in the Properties. In August 2017, pursuant to the parties' stipulation, the court entered judgment on the First and Second Claims for Relief, authorizing Trustee to sell the Properties. The Properties were both sold, resulting in net proceeds to the estate of approximately $1.8 million.

Trustee thereafter moved for summary judgment on the Third Claim for Relief, seeking a declaration that Ms. Gajiu's interest in the Properties was community property and property of the estate. Trustee argued that under California law, the fact that the couple took title as joint tenants was not sufficient to overcome the presumption that property acquired by a couple during marriage is community property, citing *Brace v. Speier (In re Brace)*, 566 B.R. 13 (9th Cir. BAP 2017).

Ms. Gajiu filed an opposition, arguing that under the Moldova

---

[4]Trustee's appointment was precipitated by Debtor's (and Ms. Gajiu's) unauthorized postpetition execution and recording of a deed of trust on the Cardwell Property in favor of Ms. Gajiu's uncle, purportedly to secure a loan of $500,000.

4

Agreement and California law, her interest in the Properties was separate property because some of the funds for their purchases had been contributed by Ms. Gajiu's relatives. Specifically, she testified in her declaration that her uncle, Leonid Kossinov, had gifted her $444,940 of the down payment for the Cardwell Property, and her mother, Tatiana Shakgeldyan, had gifted her $287,000 of the down payment for the Alla Property. She argued that, at a minimum, there was a genuine issue of material fact regarding her ownership interests that precluded summary judgment.

The bankruptcy court issued a tentative ruling granting Trustee's motion. After hearing argument, it adopted that ruling as final. The court concluded that (1) under California law, Ms. Gajiu's interest in the Properties was presumptively community property; and (2) Ms. Gajiu had not rebutted that presumption. Specifically, the bankruptcy court found that the Moldova Agreement by its terms did not apply to the Alla Property because that property was purchased before the Moldova Agreement was executed, and the agreement stated that it applied only to any subsequently purchased properties. Additionally, the court found that the Moldova Agreement was not binding on Trustee because it was not recorded. The bankruptcy court also found that Ms. Gajiu's documentary evidence of "gifts" from her relatives, purportedly to purchase the Properties, was insufficient to corroborate her declaration testimony to that

5

effect.

Thereafter, the bankruptcy court entered judgment for Trustee, declaring that the entirety of the Properties was community property as of the petition date and thus was property of the estate; as a result, all of the sale proceeds were property of the estate.

Ms. Gajiu timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err in granting summary judgment declaring that the Properties co-owned by Debtor and his non-debtor spouse were community property and thus property of Debtor's bankruptcy estate?

## STANDARD OF REVIEW

We review de novo the bankruptcy court's grant of summary judgment. *Plyam v. Precision Dev., LLC (In re Plyam)*, 530 B.R. 456, 461 (9th Cir. BAP 2015). "When we conduct a de novo review, we look at the matter anew, the same as if it had not been heard before, and as if no decision previously had been rendered, giving no deference to the bankruptcy court's determinations." *Barnes v. Belice (In re Belice)*, 461 B.R. 564, 572–73 (9th Cir. BAP 2011) (citations omitted). We must apply the same legal

6

standards that all federal courts are required to apply in considering the propriety of summary judgment. *Marciano v. Fahs (In re Marciano)*, 459 B.R. 27, 35 (9th Cir. BAP 2011), *aff'd*, 708 F.3d 1123 (9th Cir. 2013).

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Wank v. Gordon (In re Wank)*, 505 B.R. 878, 886 (9th Cir. BAP 2014) (citing Civil Rule 56(a), applicable in adversary proceedings by Rule 7056). An issue is genuine if there is enough evidence for a reasonable trier of fact to make a finding in favor of the non-moving party, and an issue is material if it might legally affect the outcome of the case. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986)).

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case. Once the moving party comes forward with sufficient evidence, the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense. A motion for summary judgment may not be defeated, however, by evidence that is merely colorable or is not significantly probative.

*C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotations omitted).

7

In considering summary judgment, the court is not permitted to weigh the evidence. *In re Wank*, 505 B.R. at 886. Nor may a court make credibility determinations or make inferences on summary judgment, if it is possible to reasonably infer otherwise. *See Anderson*, 477 U.S. at 255. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.*

## DISCUSSION

**A.    The bankruptcy court did not err in concluding that the Properties were in fact community property despite being held in joint tenancy.**

Under California law, the community property presumption embodied in California Family Code § 760[5] generally trumps the record title presumption found in California Evidence Code § 662.[6] *In re Brace*, 566 B.R. at 19-20; *Valli v. Valli (In re Marriage of Valli)*, 58 Cal. 4th 1396, 1400 (2014). This rule applies not only in marital dissolution proceedings, but also in other contexts, including bankruptcy. *In re Brace*, 566 B.R. at 20; *see also In re Obedian*, 546 B.R. 409, 422 (Bankr. C.D. Cal. 2016).

The presumption does not apply to property acquired during

---

[5]California Family Code § 760 provides, "[e]xcept as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property."

[6]California Evidence Code § 662 provides: "[t]he owner of the legal title to property is presumed to be the owner of the full beneficial title. This presumption may be rebutted only by clear and convincing proof."

8

marriage if the property is: (1) traceable to a separate property source; (2) acquired by gift or bequest; or (3) earned or accumulated while the spouses are living separate and apart. *Valli*, 58 Cal. 4th at 1400. Further, "the presumption may be rebutted by evidence that the spouses agreed to recharacterize, or 'transmute' the property from community to some other form of ownership. A transmutation is not valid unless 'made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected.'" *In re Brace*, 566 B.R. at 18 (quoting California Family Code § 852(a)).

In her opening brief, Ms. Gajiu does not seem to dispute the holdings of the above-cited cases, but she asserts that those holdings have not been adopted as controlling law in either California or the Ninth Circuit, citing *Collins v. Wolf*, 591 B.R. 752 (S.D. Cal. 2018). But *Valli* is a California Supreme Court decision. As such, it is controlling law in California. And although *Brace*, which expanded *Valli*'s holding to the non-dissolution context, has not been adopted as controlling law in the Ninth Circuit, Ms. Gajiu's citation to *Collins* is misleading. In affirming the bankruptcy court's finding that the community presumption applied over the form of title presumption in the non-dissolution context, the *Collins* court expressly rejected the appellants' argument to the contrary:

> At bottom, Appellants ask this Court to do what no California court has done and hold that [California Evidence Code] § 662 overcomes [California Family Code] § 760 in a non-dissolution

9

> context. Because no California court has expressly done so, this Court declines to hold that § 662 overcomes the § 760 presumption. Other federal courts have reached similar conclusions.

*Id.* at 767–68 (citing *In re Brace*, 566 B.R. at 23; *Herrera v. Pons*, No. 17-cv-2392-GPC-NLS, 2018 WL 2229369, at *4 (S.D. Cal. May 16, 2018); *In re Obedian*, 546 B.R. 409).

In her reply brief, Ms. Gajiu argues that the community property presumption applies only in dissolution proceedings, citing *Hanf v. Summers (In re Summers)*, 332 F.3d 1240, 1243 (9th Cir. 2003), *Schwaber v. Reed (In re Reed)*, 89 B.R. 100, 105 (Bankr. C.D. Cal. 1988), *aff'd*, 940 F.2d 1317 (9th Cir. 1991), and *In re Clark*, No. 10-23496-RAG, 2012 WL 3597410 (Bankr. D. Md. Aug. 20, 2012), *aff'd sub nom. Clark v. Guttman*, No. CCB–12–2673, 2013 WL 812017 (D. Md. March 4, 2013). The *Summers* court held that (1) the community property presumption may be overcome by evidence that spouses purchasing property from a third party took title as joint tenants, and (2) the California transmutation statutes applied only to interspousal transactions. Those conclusions have been rejected by the California Supreme Court. *Valli*, 58 Cal. 4th at 1405. And *Reed* and *Clark* both involved California statutes that specifically applied to property division in a dissolution or legal separation context. Thus these cases are inapposite.

Based on the foregoing, the bankruptcy court did not err in

10

concluding that Trustee had met his burden to show that the Properties were presumptively community property. The burden then shifted to Ms. Gajiu to demonstrate that her interest in the Properties was her separate property.[7]

## B. The bankruptcy court did not err in finding that Ms. Gajiu's evidence was insufficient to raise a genuine issue of material fact regarding her ownership interest.

### 1. The Moldova Agreement

As noted, the Moldova Agreement was a post-marital property agreement entered into by Ms. Gajiu and Debtor in September 2008, a copy of which was attached to Ms. Gajiu's declaration in support of her opposition to summary judgment. The agreement provided, in essence, that any funds received from family members would be the separate property of the spouse whose relative provided the funds, and that interests in real property purchased in the future with such funds would be held "in a strict percentage ratio to the amount received from a relative" as

---

[7]Ms. Gajiu contends that she was prejudiced by the bankruptcy court's refusal at the November 28 hearing to grant her counsel's oral request to stay its ruling on the summary judgment motion pending the outcome of the Ninth Circuit appeal of this Panel's decision in *Brace*. She does not elaborate on this assertion, relying instead upon her argument that she presented sufficient evidence to raise an issue of material fact regarding the character of ownership of the Properties. In any event, when the stay was requested, the bankruptcy court had already announced its ruling, which it correctly found rendered it final under *Noli v. Comm'r*, 860 F.2d 1521 (9th Cir. 1988), even though a written order had not yet been entered. Ms. Gajiu points to no authority supporting the conclusion that the bankruptcy court abused its discretion in refusing to stay the proceedings at that point.

that spouse's separate property.

The bankruptcy court found that the Moldova Agreement did not apply to the Alla Property, which had been purchased before the agreement was executed. Ms. Gajiu does not assign error to this finding. As for the Cardwell Property, the bankruptcy court found, as discussed below, that the evidence presented by Ms. Gajiu did not demonstrate that funds wired from Mr. Kossinov were transferred to Ms. Gajiu or used for the Cardwell Property down payment.

Moreover, the bankruptcy court found that Trustee was not bound by the Moldova Agreement because it had not been recorded. Under California Family Code § 852(b), "[a] transmutation of property is not effective as to third parties without notice thereof unless recorded." And under California Civil Code § 1217, an unrecorded instrument is valid only between the parties to the instrument and those who have notice of it.

Ms. Gajiu argues that Trustee was bound by the Moldova Agreement despite the fact that it was unrecorded, for two reasons. First, she contends that, under § 541, Trustee stepped into Debtor's shoes when he was appointed and, as such, is deemed to have had notice of the agreement. Second, she contends that the agreement was disclosed in pleadings filed in the bankruptcy case such that Trustee was put on inquiry notice of its existence.

Although Ms. Gajiu is correct that a bankruptcy trustee succeeds to a

12

debtor's interests in estate property, including legal claims and defenses, she does not provide any authority establishing that a debtor's property interests include knowledge of an unrecorded document. There is scant case law on this question outside the context of a trustee's strong-arm powers. But in *In re Reed*, 89 B.R. at 105, the chapter 7 trustee asserted that proceeds from the sale of debtor's real property were community property. The trustee relied upon California Civil Code § 4800.1 (repealed in 1992), which provided that, for purposes of division of property upon dissolution or legal separation, property acquired during marriage was presumed to be community property. The trustee argued that he stepped into the shoes of the debtor for this purpose, but the bankruptcy court rejected this contention:

> Trustee contends that he should not be treated as a third party creditor, but rather as Debtor's successor in interest pursuant to 11 U.S.C. Section 541(c)(1). As a result, Trustee argues that he succeeds to Debtor's rights as a spouse and therefore can assert the presumption set forth in CC Section 4800.1.

> This argument fails, first, because a trustee in a Chapter 7 bankruptcy case succeeds to a debtor's interest in property only as a fiduciary to the debtor's creditors. Therefore, a Chapter 7 trustee is more like a creditor than a spouse. . . .

*Id.* at 105. *See also Osborn v. Reaves (In re Osborn)*, No. AZ-17-1083-KuFs, 2017 WL 5472554, at *8 (9th Cir. BAP Nov. 9, 2017) (rejecting appellant's

contention that an unrecorded marital property agreement was binding on the chapter 7 trustee when Arizona law required recordation, noting that "recording statutes are generally for the purpose of providing constructive notice to third parties" and to "protect creditors who transact with spouses that have entered into what would otherwise be secret agreements which alter the character of the spouses' marital property from community to separate.").

As for the purported inquiry notice, nothing in the Debtor's original schedules would have put Trustee on notice of the Moldova Agreement. Ms. Gajiu points out three post-petition documents that she contends put Trustee on notice or show that he had notice: (1) her answer filed in the adversary proceeding in January 2017, in which she asserted as an affirmative defense that she had separate interests in the Properties; (2) her opposition to the motion for summary judgment filed in April 2017, in which she stated that the Properties were subject to a post-marital agreement; and (3) Trustee's motion to approve a settlement agreement filed in June 2017, which mentioned the post-nuptial agreement.

As pointed out by Trustee, the documents at issue were filed well past the petition date. Ms. Gajiu points to no authority that a trustee's **post-petition** discovery of an unrecorded document affecting real property suffices to bind him to its terms. Accordingly, Ms. Gajiu has not demonstrated that the bankruptcy court erred in ruling that the Moldova

14

Agreement was not binding on Trustee.

## 2. Relatives' purported gifts

Even without the Moldova Agreement, Ms. Gajiu contends that she produced evidence sufficient to raise a genuine issue of material fact regarding whether the Properties were purchased with her separate funds, i.e., gifts provided by her mother and uncle. The bankruptcy court found to the contrary, and our independent review of the evidence supports that finding.

Regarding the Alla Property, Ms. Gajiu filed a declaration stating "[m]y mother, Tatiana Shakgeldyan, provided $287,000 of the down payment for the purchase of the Alla Property as a separate property gift to me." She attached what she described as "true and correct copies of the wire and escrow documents" demonstrating that those funds were put into escrow. Those documents consisted of two pages showing that Ms. Gajiu wired $287,000 to an escrow on June 4, 2008, but there was no documentation of where the funds came from or whether the escrow number on the documents pertained to the Alla Property.[8] In short, the documents did not corroborate Ms. Gajiu's assertion that her mother gave her funds for the purchase of the Alla Property, or that they were a

---

[8]Ms. Gajiu also stated in her declaration that she had contributed funds toward the Alla Property for ongoing maintenance, the majority of the mortgage payments, and remodeling costs, but she provided no further detail or documentary evidence to support that assertion.

"separate property gift." The bankruptcy court found that Ms. Gajiu's declaration was uncorroborated, self-serving, and conclusory and thus insufficient to create a genuine issue of material fact.

A trial court may not disregard a declaration at the summary judgment stage solely because it is uncorroborated and self-serving. *S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007). But bare assertions of a legal conclusion, unsupported by specific facts, are insufficient to raise a genuine issue of material fact. *Bader v. N. Line Layers, Inc.*, 503 F.3d 813, 820 n.4 (9th Cir. 2007). Ms. Gajiu's statement that her mother provided her funds for the Alla Property as a "separate property gift" is a legal conclusion unsupported by specific facts. As such, the bankruptcy court did not err in finding that Ms. Gajiu's declaration did not raise a genuine issue of material fact. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1059 n.5, 1061 (9th Cir. 2002) (holding that the district court properly disregarded the declaration that included facts beyond the declarant's personal knowledge and did not indicate how she knew the facts to be true); *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

As for the Cardwell Property, Ms. Gajiu testified in her declaration that Mr. Kossinov had provided $444,940 of the down payment for that property "as a separate property gift" to her. She attached "true and

correct" copies of bank statements, but those statements did not identify the bank, account number, or account holder. The statements did show two incoming wires from Mr. Kossinov, one on January 2, 2013 for $164,970, and one on September 13, 2013 for $279,970. As the bankruptcy court found, however, there was no corroborating evidence that any of those funds were transferred to Ms. Gajiu, deposited into an account in her name, or used to buy the Cardwell Property.

Moreover, Ms. Gajiu's statement that the funds contributed by Mr. Kossinov were a separate property gift was contradicted by Trustee's evidence. Trustee produced a copy of a deed of trust in favor of Mr. Kossinov, which was executed by Debtor and Ms. Gajiu in December 2015 to secure a loan of $500,000. He also produced Mr. Kossinov's declaration filed in the bankruptcy court in February 2016 in which Mr. Kossinov stated that he had **loaned** Debtor and Ms. Gajiu $500,000 to buy the Cardwell Property. The court found that Ms. Gajiu's assertion that the funds received from Mr. Kossinov were a gift was "blatantly contradicted by the record" and thus the court could disregard it. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Based on the foregoing, the bankruptcy court did not err in

concluding that Ms. Gajiu's evidence did not raise a genuine issue of material fact for trial.

## CONCLUSION

For all of these reasons, we AFFIRM.